## KING & BARNES, ADM'RS, v. MOSELY.

1. "A covenant in a bond for title to land, that H. W. B, and M. B, his wife, shall well and truly convey, and make a fee simple title to the land to the said M," upon the payment of the purchase money—only bound the wife to relinquish her dower, and did not bind her individually to make title to the lands; nor was the surety to the bond bound for her acts, further than she was bound herself.

2. The statute of *non-claim*, commences runing from the time of the payment of the purchase money of land, if there is any one then in being of whom the vendee can demand title, and the rule would be the same, if the vendee was evicted by title paramount, or the hier asserted a title hostile to that of his ancestor.

ERROR to the Circuit Court of Dallas.

John Mosely, defendant in error, brought an action, in the cir-

cuit court of Dallas, aga'nst the plaintiffs in error, as admin'strators of Lloyd Barns, deceased, upon a bond, dated 4th December, 1832, executed by Henry W. Barnes, with Martha M. Barnes, his wife, and the said Lloyd Barnes, deceased, for the payment of twenty-eight hundred dollars, to said Mosely, with a condition under written; whereby, after reciting to the effect, that said Mosely, together with Mary and Clement Mosely, had that day executed three promissory notes to the said Henry W. Barnes, one payable on the 1st of January, 1834, for $400; one payable on the 1st January, 1835, for $500, and one payable on the 1st January, 1836, for $500; and said condition further recited, that said notes had been given by said John Mosely, as the purchase money for two several tracts of land, lying and being in Edgefield District, South Carol na, (the metes and bounds of which are described,) and that the title was to be made to said lands when the said notes were paid; then if the said Henry W. Barnes and Martha Barns, his wife should well and truly convey, and make a fee simple title to the said land, to the said Mosely, and warrant and defend the same against all persons, especially against the said Martha and her heirs that then the obligation was to be void, otherwise to remain in full force and virtue.

The declaration sets out this condition, and avers, that "although said Mosely had long since paid all said promissory notes, given for said purchase money, for said land, and every part thereof to said Henry W. Barnes, yet neither the said Henry W. Barnes, nor the said Martha Barnes, his wife have made a fee simple title to said lands, to Mosely, and warranted and defended the same against all persons, especially the said Martha Barnes and her heirs; but so do, after the death of the said Henry W., the said Martha had hitherto wholly neglected and refused, and still does neglect and refuse, although specially requested so to do, heretofore, to wit: on the 25th September, 1841, after the death of said Henry W. Barnes, to wit, in the county aforesaid, by reason of which breaches, the said writing obligatory became forfeited, and an action accrued to demand and have said sum of $2800.

To this declaration, there was a general demurrer in short, by consent; which was overruled by the court.

The defendants (in the court below) then filed seven pleas;

which, with the proceedings consequent upon them, it is deemed unnecessary to notice on this occasion, except the last.

The 7th plea was upon the statute of *non-claim;* setting forth that the claim or demand, sued on, was not presented to the defendants, as administrators, within eighteen months after the letters of administration on the estate of their intestate were granted, nor within eighteen months after said claim accrued—and which letters were granted on the 8th of October, 1838.

To this plea the plaintiffs demurred, which having been overruled by the court, he filed a replication to said plea, that his aforesaid claim or demand accrued within eighteen months next previous to the commencement of this a.t on, and not sooner, to wit, on the 25th September, 1841, at, to wit, in the county aforesaid, and this he is ready to verify, &c.

To this replication, the defendants in the court below, demurred; but the court overruled the demurrer.

The judgment of the court below overruling the demurrer to the declaration, and that overruling the demurrer to the replication to the 7th plea, a e the only ass gnmea.s of error, wh.ch the court tu nk it necessary to notice.

R. SAFFOLD and G. W. GAYLE, for plaintiffs in error.
WM. HUNTER, *contra.*

CLAY, J—1. The question, whether the court below erred, in overruling the demurrer to the declaration, rests upon the legal effect of the bond, on which the action is founded. The bond was given by Henry W. Barnes, with Martha M. Barnes, his wife, and Lloyd Barns, the intestate of the plaintiffs in error, to the defendant in error, in the penal sum of $2800, conditioned for the conveyance by the said Henry W, and Martha M, of title to certain lands in South Carolina, on the payment of a certain sum, being the consideration for said lands, by the said John Mosely. The declaration avers the payment of the purchase money, long since, and the tender of a deed of conveyance to Martha M. Barnes, for her signature, on a day previous to the commencement of the action.

It is admitted by the counsel, on both sides, and such is undoubtedly the law of this country, that this bond imposed no legal obligation on Martha M. Barnes. Being a married woman at the

date of its execution, as appears upon the face of the bond, she was incapable of binding herself, and so far as it purports to impose any duty on her, it is absolutely void. It is a settled principle of the common law, that *coveture* disqualifies a *feme* from entering into a contract, or covenant, personally binding upon her. She may, at common law, pass her real property by a *fine* levied; and under our statute, and similar ones, perhaps exist in most, or all the other states, she may, in conjunction with her husband, and upon such examination as the statute requires, convey her real estate or any existing, or future contingent interest in it. This has been well called a shield of protection, which the law throws around a married woman, in reference to the possibility, that the husband, practising upon her affections and fears, may take undue advantage of her. Hence, she is disabled from contracting personally, with him relative to her property, except according to the forms prescribed by law. [17 John. R. 167; Clancey's husband and wife, 68; 32 vol. Law Library, 59.]

But, the counsel for the defendant in error, admitting the soundness of this principle, contends that a man may covenant for the performance of the acts or duties of another; and, that regarding this bond, as not in any degree legally binding on Martha M. Barnes, his wife, it must be construed as the obligation or covenant of Henry W. Barnes, that Martha M. Barnes, should make the conveyance of title contemplated by the condition. It is not controverted that an individual may covenant that another, shall do an act, or perform a duty; but the question recurs, is this a covenant of that nature? The stipulation in the condition of the bond, is not that Martha M. Barnes shall convey title to the lands described, after the death of her husband; nor that she, individually, shall, at any time, make the conveyance, but that "the said Henry W. Barnes, and Martha M. Barnes, *his wife*, shall well and truly convey, and make fee simple title" &c. In placing a construction on a contract, or ascertaining the meaning of the parties, reference should always be had to the laws of the country, in which it is made, and the surrounding circumstances; and language should be interpreted according to its usual acceptation. According to the law of this State, when the contract was made, a *feme covert* must unite with her husband in the conveyance of real estate, of which he is seized and possessed during the coverture, in order to bar her claim to dower, if she should survive

him.. For that purpose alone, she joins him in the deed, and if she were afterwards to become entitled to the land, through any other medium, she would not be *estopped* to assert her right, in consequence of having signed the deed with her husband. It would not be assuming too much, to suppose, that it is the general understanding of the country, that a married woman should unite with her husband in a conveyance of real estate, for the purpose of securing the purchaser against her future, contingent claim for dower. Then, it is reasonable to suppose, that when this bond was executed, the parties had these things in their minds, and with the view to the relinquishment of her dower, merely, and not the conveyance of the title, she was united with her husband in the bond. There is no covenant in it, that she shall ever make a separate conveyance; and, as it would have been a futile attempt to bind her by such a contract, the reasonable construction, appears to be, that the understanding of the parties was, that she should join her husband in making such a conveyance, as would conform to the law and practice of the country.

It is admitted on all hands, as the settled law of this State, that an individual holding an obligation for the conveyance of title to real property, is bound to tender to the obligor, a deed conforming to its terms, before he can allege a breach. We have seen that the signature of Martha M. Barnes to the bond, on which this action is founded, imposed on her no legal obligation to make the conveyance; and we have seen that the bond cannot be construed as a covenant, on the part of Henry W. Barnes, or Lloyd Barns, that a title should be conveyed by Martha M. Barnes, separately and individually. From these premises, the conclusion is inevitable, that the tender of the deed to Martha M. Barnes, was not such as to sustain any breach of the condition; the breach assigned in the declaration is defective, and the demurrer should have been sustained.

The right to demand such a conveyance, as is contemplated by the condition of the bond, accrued on the complete payment of the purchase money. If Henry W. Barnes was then living, there is no doubt, that the tender of a proper deed to him, would have been good; and his neglect, or refusal to execute it, would have been a breach of his covenant. If he was then dead, the tender

of the deed might have been made to his heirs, if they were of full age, and the lands had descended to them.

2. The views, which have been presented on the first assignment of errors would dispose of the case in this court, for the present, but we have thought it advisable to pass on the 7th assignment, which goes to the overruling the defendant's demurrer to the plaintiff's replication, to the plea of the statute of *non-claim*, as it may have an important influence on the future destiny of the cause, between these parties.

As we have seen, the plea alleges, that the claim, or demand, sued on, was not presented to the defendants (as administrators of Lloyd Barnes) within eighteen months after the letters of administration on the estate of said Lloyd Barnes, deceased, were granted, nor within eighteen months after said claim accrued—and that said letters were granted on the 8th of October, 1838. The replication avers that the claim or demand accrued within eighteen months previous to the commencement of this action, and not sooner, to wit, on the 25th September, 1841, and concludes with a verification.   Here is merely a re-affirmance of the averment in the declaration, so far as regards *the time of tendering the deed* to Martha M. Barnes; without any additional averment or fact, as to the manner, or means, by which the claim accrued.   The averment is insufficient of itself, because it does not show why, or how, it so accrued; and there is no averment that supplies this deficiency, but it is left to the terms of the condition of the bond, which fixes the time for making the deed, or the right of the obligee to demand it, at the time of the payment of the purchase money.   The day on which the payment was made, is no where shewn by the foregoing part of the pleadings, and as the replication leaves it uncertain, it must be considered defective.

We do not consider the argument sound, that the statute of non-claim only began to run from the tender of the deed, if it had been made to a person under any legal obligation to convey; nor that it would only begin to run *when the right of action accrued.* The provision of the statute is, that "all claims against the estates of deceased persons shall be presented to the executor or administrator, within eighteen months after the same shall have accrued, or within eighteen months after letters testamentary, or letters of administration shall have been granted to the executor,

or administrator," &c.   The language of the statute is not *after the right of action has accrued,* but *after the claim has accrued.* It certainly never has been its construction, that a claim which does not become due within eighteen months, after the grant of letters testamentary, or of administration, shall not be presented within that time.   Such a construction would go far. to defeat the beneficial purposes for which it was intended; and, as we think, would be inconsistent with the interpretation heretofore given it by the courts.

The *claim* in this case, was primarily for a conveyance of the land, for the performance of which, the personal representatives were not responsible until it was converted into a money demand by a breach of the condition of the bond.   It could not, however, be tolerated that the obligee should lie by for years, without demanding performance, and then convert his claim into a money demand, and proceed against the executor.

We think, therefore, that the statute would commence running from the time of the payment of the purchase money, if there was any one then in being, of whom the obligee could demand title. The same rule would obtain, if the obligee was evicted by title paramount, or the heir asserted a title to the land hostile to the title of his ancestor; as in both cases a demand of title would be nugatory; and the law never requires an unnecessary act to be done.   The case of Paine v. Smith, ex'r, [2 *Root's Rep. 142,*] establishes the principle, that there is no difference between a conditional and absolute liability, as to the necessity of a presentment to the executor, to prevent the operation of the statute of *non-claim.*

Whether, in a case where the obligor died previous to the right of the obligee to demand title, and the title descended to infant heirs, it would not be necessary, if the obligee wished to preserve his claim against the executor, that he should proceed promptly against the heirs, in a court of chancery, or by petition to the county court, under our statute, need not now be determined.

Let the judgment be reversed, and the cause remanded.