COCKRILL'S ADM'R. *vs.* HOBSON, use, &c.

16  391
127  639

1. Where an endorser of a negotiable note has received from the maker effects of sufficient value to discharge it, and in consideration thereof, promises to pay it, proof of demand and notice is not necessary to charge him, whether the promise was made before or after the maturity of the note.

2. Where a count in a declaration by the endorsee against the personal representatives of the endorser of a negotioble note, avers, that that by an agreement between the maker and endorser the surplus value of certain slaves, held by the latter as an indemnity, was, after the payment of the sum of $4646 13, to be applied to the discharge of several notes, of which the note sued on was one, and in the event the endorser should keep the slaves, &c. the surplus should be ascertained by three disinterested persons, &c , and further avers that said surplus was sufficient fully to indemnify the endorser, &c:—*Held,* that the count is not defective, because it fails to aver that the surplus had been ascertained in the mode designated by the agreement.

3. The statute of *non-claim* does not begin to run in favor of the personal representative of the endorser of a negotiable note, until its maturity.

4. The fact that an endorser, without the knowledge of the endorsee, was indemnified by the maker, and demand and notice thereby waived, cannot have the effect to set the statute of *non-claim* in operation before the maturity of the note.

5. The maker of a negotiable note is a competent witness for the endorsee in an action against the endorser for the purpose of proving that he has fully indemnified the latter.

Error to the County Court of Franklin. Tried before the Hon. Richard S. Watkins, Judge.

Assumpsit by defendant against plaintiffs in error on the endorsement by their intestate of a promissory note made by David Deshler, dated 18th January 1840, at twenty-eight

months after date, and payable at the Planters' Bank of Tennessee at Nashville. The suit was instituted on the 23d July 1842. The declaration contained five counts, to the third, fourth and fifth of which a demurrer was interposed. The third and fourth counts, as far as is necessary, are set out in the opinion of the court. The fifth, after reciting an agreement between Deshler, the maker of the note, and the intestate of the defendants, which provides, that the maker shall have the benefit of the overplus of certain negroes, then in possession of Cockrill, the intestate, after refunding to him, or after he has retained a sufficient amount of them in value to satisfy himself the sum of forty-six hundred and forty-six dollars and thirteen cents, to be applied to the payment of certain notes due by the maker, among which is the note sued on, and that if the intestate should keep the negroes in final satisfaction of the $4646 13, "the negroes shall be valued by three disinterested individuals"—one chosen by the maker, one by the intestate, and the third by one Merrill, the person who was once the owner of the slaves and the debtor of both of them, should he think proper to appoint an arbitrator—avers, that the note of $2300, mentioned in the said agreement, is the same note declared on, and "that the overplus value of said slaves alluded to in said instrument over and above the $4646 13, all interest and charges on the same, &c., was more than enough to fully pay off and discharge the demand sued for, and that said John Cockrill so fully and amply secured himself against all losses, that might otherwise have arisen to him touching his liability as endorser on the note sued for, and so waived the necessity of demand of the maker, and notice" &c. The court overruled the demurrer to each count: whereupon the defendants plead the general issue and statute of non-claim. In the progress of the trial, the plaintiff offered Deshler, the maker of the note, as a witness to prove the value of the slaves embraced in the agreement between him and Cockrill, the intestate, to which the defendants objected, but the court overruled the objection and allowed him to testify. The defendants asked the court to charge the jury: 2d. That the agreement, executed by Cockrill, and which is set out in the fifth count of the declaration, and which was introduced in evidence by the plaintiffs, does not afford any evidence of

an acknowledgment of said Cockrill, that he had funds in his hands furnished by Deshler to pay the note sued on. 3d. That if Cockrill was never called on to have the negroes valued according to the agreement, although their value, after payment of the $4646 13, would leave an overplus in Cockrill's hands, yet that excess of value cannot be regarded as funds in his hands to pay the note sued on: 4th. That the statute of non-claim began to run from the grant of administration to the defendants on the 5th of October 1840. Each of these charges was refused and the defendants excepted, and now assign the refusal of the court to charge as requested, and its several rulings as error.

Nooe, for the plaintiffs in error.

Wm. Cooper, for the defendants.

COLLIER, C. J.—1. The third count alleges, that the intestate, previous to the maturity of the note indorsed by him, received from the maker, " property, money, bank notes, and effects, sufficient to pay off and discharge it," with interest, &c., and that in consideration thereof, he undertook and promised to pay the same, and thereby waived the necessity of notice of demand and non-payment. These allegations we think are a sufficient substitute for demand and notice, and if proved, when taken in connection with other parts of the declaration would entitle the plaintiff to recover. In the fourth count it is alleged that the intestate "in consideration of property, money and bank notes, by him received of and from" the maker of the note, undertook and promised to pay the same. It is immaterial whether this promise was made previous or subsequent to the maturity and dishonor of the note, being made upon an adequate consideration it would in either case dispense with notice of non-payment. The agreement set out in the fifth count, provides that the maker " shall have the benefit of the entire overplus" of certain negroes then in the intestate's possession, " after refunding to the latter, or after he has retained a sufficient amount in value of them, to satisfy himself the sum of forty-six hundred and forty-six dollars and thirteen cents; this overplus is to be appropriated by the ma-

30

ker to the payment of certain notes, among which is that now in suit. It is further provided, that if the intestate should keep the negroes in final satisfaction of the sum designated, then they shall be valued by three disinterested individuals— one chosen by the maker, one by the intestate, and the third by the person who was once the owner of the slaves, and the debtor of both of them, should he think proper to appoint an arbitrator.

It is objected to the fifth count, that it does not aver that the value of the slaves had been ascertained by an arbitration as contemplated by the agreement: *Further*, that it is not averred that the excess of value above forty-six hundred and forty-six dollars and thirteen cents, was sufficient to pay off the note, the amount of which is now sought to be recovered. The count contains precisely such an averment as the second objection supposes to be wanting, consequently the point made does not arise. Conceding that it was indispensable to the plaintiff's right to recover in *an action upon the agreement*, that the value of the slaves should have been adjusted in the manner it provides, and still the plaintiff might excuse a failure to give notice of non-payment, by showing that the intestate was sufficiently indemnified, though the arbitrators had not acted in the matter. This proposition is perfectly clear, if we will only bear in mind that the maker of the note is not seeking to enforce the agreement, but the plaintiff, an endorsee of the intestate, who was a prior endorser, no party to the agreement, and consequently not authorised to move in settling the value of the slaves, offers other evidence to the point, by way of excuse for not performing what would otherwise be a legal duty.

2. The next question we propose to consider is, whether the endorsement of a negotiable promissory note gives to the endorsee such a *claim* against the endorser as must be presented to the administrator of the latter within eighteen months after the grant of administration, although the endorser or his administrator have not been made absolutely liable by notice of the dishonor of the paper? In King & Barnes v. Mosely, 5 Ala. Rep. 610, it was decided that the statute of *non-claim* begins to run from the time the *claim accrues*, which may be previous to the accrual of the *cause of action ;* as in the case of

Cockrill's adm'r v. Hobson.

a promissory note or other evidence of debt running to matu-
rity and not due.   This  decision is  rested upon the terms of
the act, which so far  as  material to  notice, requires that " all
claims against the estates of deceased persons shall be presen-
ted to the executor or administrator, within eighteen months
after the same  shall have accrued, or within eighteen months
after letters testamentary, or letters of administration shall have
been granted to the  executor, or  administrator, &c."—Clay's
Digest 195, § 17.   *It is further held,* that  where a bond in a
certain penalty was executed, with  a condition to  make title
to land upon the payment of the purchase  money, the statute
did not begin to run  until all the  money was paid; for until
then, the obligor was  not in default, and  an action could not
be maintained for the penalty against him or his personal re-
presentatives.   So in  Pinkston v. Huie, 9 Ala. Rep. 252, it
was determined, that upon a bond conditioned to make title to
land in a convenient time after a *feme covert* attained her ma-
jority, the statute of *non-claim* begins to run from the time she
comes of full age, and not from the time that letters testamen-
tary or of administration upon the obligor's estate were gran-
ted.   These decisions were reaffirmed in Jones' ex'rs v. Light-
foot, 10 Ala. Rep. 17, where it was distinctly conceded, that
where the liability to pay money is contingent and may never
happen, there is no such claim as the act contemplates; and con-
sequently no presentation is necessary until the event happens.

The liabilty of an endorser is *contingent,* and where the pa-
per is mercantile, only becomes absolute upon a  demand be-
ing made of the  primary party, and notice  given of the dis-
honor.   His undertaking is *conditional,* viz, to pay in the event
the maker and drawer fails, and he is promptly advised of the
fact.   Until these steps are  taken to  charge him, the holder
has no claim against the *endorser ;* for until then, it cannot ap-
pear that the debtor, whose punctuality the endorser has con-
ditionally guaranteed, will not comply, and if he does not, that
the holder will make the  guarantee absolute  by performing
the condition upon which it depends.   Such being the con-
tract of endorsement, the cases cited are in  principle directly
in point, and conclusively establish that the *claim* of the plain-
tiff against the defendants or their intestate *did not accrue pre-
viously to the maturity of the note;* and consequently the act

cited did not begin to run until that time.　See also Neil v. Cunningham, 2 Porter's Rep. 173.

It is argued for the defendants that if their intestate was indemnified, so as to dispense with notice of non-payment, that then his undertaking was absolute, and the statute began to run from the grant of administration.　The indemnity was the result of an agreement between the intestate and the maker of the note, of which, from any thing appearing to the contrary, the plaintiff had no knowledge; and whatever may have been its effect, if he had been informed of it, yet being ignorant, it could not prejudice his rights, or deprive him of a remdy to which he would otherwise have been entitled.　This proposition we think is sufficiently illustrated by its statement. But is does not by any means follow, that because the contract of the intestate with the plaintiff was *conditional*, and the liability it imposed *contingent*, the endorsee shall not be permitted to show, that in consequence of an arrangment between the former and the maker of the note, the intestate had waived his right as an endorser to insist upon a notice, and was liable at all events.　The two questions are disconnected with each other, and the fact that the agreement and endorsement evidence a contract between different parties, and the plaintiff was ignorant of the former, cannot prevent the plaintiff from claiming any benefit from it, though he will not be prejudiced by it.

We think Deshler was not disqualified by interest from proving that the property received by the defendant's intestate was an adequate indemnity.　A verdict for or against either party would not in any manner affect the question of his liability as the maker of the note.　If the plaintiff was unsuccesful, or if his judgment against the defendants remained unsatisfied, he might prosecute his suit against the witness, and the record in the present case would conclude nothing in that action—in fact it is difficult to conceive how it could be used for either party.　The witness would not be liable to the plaintiff for the costs, if he failed, or chargeable to him otherwise, to a greater extent than he would be to the defendants should a recovery be had against them on their intestate's endorsement.　The measure of the liability in each case, would be indicated by the face of the note.　As to the mode in which

the witness might satisfy the one party or the other, this could not affect his competency. The plaintiff would be entitled to the money, while the witness might discharge the demand of the plaintiffs by appropriating the " overplus value of the slaves" (as it is designated.) This would be considered as moneys' worth, and at most the effect resulting from the different modes of satisfying the witness's liability would go only to his credit.

No reason is perceivable why the agreement between the witness and the intestate should render inapplicable the principle which recognises the competency of the maker of a note to give evidence in a suit against an endorser. 3 Phil. Ev. C. & H's notes, 1545, et seq.; Stewart v. Conner, 9 Ala. Rep. 803. The right of the witness to recover the value of the slaves beyond the amount of the sum they were intended to pay the intestate, was not drawn in question; nor can we perceive how it could be in the present case. We repeat that the inquiry as to their value was made merely for the purpose of showing that the plaintiff was relieved from the obligation to give notice of the dishonor of the note.

What we have said will relieve us from the necessity of doing more than giving a passing notice to the charges to the jury. The second charge was rightly refused, or if given, to prevent the jury from being misled, the court should have informed them that although the agreement per se did not show that the intestate had funds, provided by Deshler, to pay the note sued on, or amount to a stipulation, that " if Merrill did not pay it," he (intestate) would, yet if the value of the slaves was sufficient to pay the $4646 13, and the note also, a matter which they were to determine from the evidence, then the agreement would be such an indemnity as would excuse the failure to give notice of non-payment. The other notes for which the " overplus" was chargeable, were payable long previous to that upon the endorsement of which the defendants are sued; and as there is nothing said in the record in respect to them, it may be infered that they were promptly paid at maturity, or they have been since paid by a party primarily liable. If these inferences are unfounded in fact, and the indemnity is insufficient to discharge all the notes, the defendant may make defence against those still unpaid; but in the

present posture of the case, they can have no influence. The questions arising upon the remaining charges have been already considered, and our conclusion upon the entire case is, that the judgment of the County Court must be affirmed.