## Blum v. Harrison.

*Bill in Equity to enjoin Sale under Mortgage, and to compel Entry of Satisfaction and Cancellation of Mortgage.*

*Purchase by wife of husband's lands, at sale by assignee in bankruptcy.*—A married woman, owning a statutory separate estate, may, with the assent of her husband, become the purchaser of his lands at a sale made by his assignee in bankruptcy, and take the title in her own name; and the lands so purchased, and paid for with her own funds, become a part of her statutory separate estate.

APPEAL from the Chancery Court at Montgomery.
Heard before the Hon. ADAM C. FELDER.

P. T. SAYRE, for appellant.

THOS. H. WATTS and STONE & CLOPTON, *contra*.

PETERS, C. J. — This cause depends mainly on the proofs, upon which the learned chancellor based his decree in the court below. The facts which are material to the merits of the case made in the bill and cross-bill, and which are not controverted, are these: Jackson Harrison and his wife, Susannah H. Harrison, the appellee in this suit, executed their joint promissory note, for the sum of $4,000, dated the 1st day of January, 1867, and payable to Edward Blum, the appellant in this suit, on the 1st day of January, 1868, with interest from the date. Said note was executed at Montgomery, in this State ; and for the purpose of securing the payment of said promissory note, Harrison and his wife executed a mortgage to Blum, on certain lands of the husband, and also certain lands of the wife's statutory separate estate, and on the crops of corn and cotton to be raised on certain of the mortgaged premises during the year 1867. This mortgage contained a stipulation that, upon a sale of the crops included in the mortgage, the proceeds of such sale should be applied, first, to the payment of the expenses of the sale under the mortgage upon its forfeiture, and next to the payment of the mortgage debt. Of the crop mentioned in the mortgage, there were forty-six bales of cotton delivered to Blum, and a receipt given for the same to "S. H. Harrison," which is dated February 29, 1868. These are the initials of Mrs. Harrison's name, and the receipt recites that the cotton was received "of S. H. Harrison." This cotton was sold by Blum, on the 4th day of March, 1868, and, after deducting the expenses of the sale, commissions, and insurance, it brought the sum of $4,711.07, which exceeded the amount due upon the note secured by the mortgage, by several hundred dollars. But, with the knowledge of the husband of Mrs. Harrison, who

was also a party to the mortgage, and to the note which it was given to secure, the moneys accruing from the sale of said forty-six bales of cotton were applied to the payment of debts which said husband of Mrs. Harrison owed to Blum, or the firm of which he was a partner, except the sum of $    , which was applied as a credit on the mortgage note for $4,000. There is no sufficient proof that Mrs. Harrison had any notice of this application of these funds, or acquiesced in it. The mortgage contained a power of sale in favor of Blum, and after the maturity of the mortgage debt, he advertised the lands for sale under this power in the mortgage. Thereupon, Mrs. Harrison filed her bill in this case, to restrain said sale, and to compel Blum to acknowledge satisfaction of the debt, and tc surrender the mortgage, and have the same cancelled as paid in full.

The bill also alleges that Harrison, the husband of the complainant, filed his petition to be declared a bankrupt, in the proper court for that purpose, on the 28th day of February, 1868; that the lands belonging to him were surrendered in bankruptcy, and sold by the assignee, and purchased by Mrs. Harrison at the assignee's sale; and that she had thus become the owner of all the lands conveyed in said mortgage. The assignee's deed bears date January 16, 1869; and under this deed, and in her own right, she claims all the lands conveyed in the mortgage as her statutory separate estate. The bill was filed on the 27th day of January, 1869, and the prayer was for an injunction against Blum, to stay the sale under the mortgage; and that the mortgage debt be decreed to be paid and satisfied, and that the note and mortgage be cancelled and delivered up to complainant, and for general relief.

The defendant Blum answers the bill, and sets up in his answer, by way of cross-bill, that Jackson Harrison, the husband of Mrs. Harrison, consented to the application of the proceeds of the forty-six bales of cotton to the payment of other debts than the debt secured in the mortgage; and that the mortgage debt, either in part or whole, was contracted for family supplies; and he denies the full payment of the mortgage debt, and insists upon his right to sell the lands mentioned in the mortgage, under his power of sale, so far at least as that portion which belonged to Jackson Harrison was concerned. Harrison also answered his wife's bill, and admitted all its essential allegations. Mrs. Harrison and her husband both answer the cross-bill, and deny that the mortgage debt is unpaid, and that Harrison assented to the application of the proceeds of the forty-six bales of cotton as made by Blum, and shown in his cross-bill. And Mrs. Harrison also denies that she had any knowledge of such application, or that she ever consented to it. She also demurs to the cross-bill for want of equity.

[Blum v. Harrison.]

There was some evidence taken on both sides. The cause was heard on the bill and answers, cross-bill, exhibits, agreement of counsel, and proofs; and the chancellor decreed the relief asked in the original bill filed by Mrs. Harrison, by enjoining the sale under the mortgage, and ordering the note and mortgage to be given up and cancelled, and taxed Blum with all the costs. From this decree Blum appeals to this court; and here assigns the decree in the court below as error.

A married woman, in this State, owning a statutory separate property, is only liberated from the common law disabilities imposed by marriage, to the extent allowed by our statute regulating the estate of the wife. *Wilkinson* v. *Cheatham*, 45 Ala. 337. Her disabilities, such as the law makes them, are imposed for her protection, and not for her injury. But, at common law, she could not bind herself personally by contract during her coverture, except as to her separate estate. *Jackson* v. *Vanderheyden*, 17 Johns. 167; *King & Barnes, Adm'rs*, v. *Mosely*, 5 Ala. 610, 612, 613. And under our statute, her property vests in the husband as her trustee, who has the right to manage and control the same, and appropriate the rents, income, and profits thereof as he may choose, except to the payment of his own debts. Rev. Code, § 2372. He may then reinvest it, or permit her to do so, as he may think fit, if it consists in money, or has been reduced to money. The mode of reinvestment is not prescribed by the statute. Then, the parties may select any legal mode that may suit them; that is, the husband may make the investment, as the trustee of the wife, for her benefit, or permit her to make the investment for herself. Rev. Code, § 2374. Then, the wife's purchase of the husband's lands conveyed in the mortgage, at the bankrupt's sale, was an investment of her funds in that way; and as this was done with the knowledge of the husband, and with funds he had the right to control, and to use for her benefit, it will be presumed that it was done with her assent. In this view of the law, the deed of the assignee in bankruptcy vested in Mrs. Harrison the title to all the lands conveyed in the mortgage; and if, at the date of her purchase at the bankrupt sale, to wit, the 16th day of January, 1869, the mortgage debt was really paid, as she insists, then her title was unincumbered by the mortgage.

Whether the mortgage was paid or not, is a question of fact rather than of law, to be settled by the proofs. The evidence of the mortgage shows that the cotton crop of 1867 was, by agreement between Mrs. Harrison, her husband, and Blum, appropriated to the payment of the mortgage debt. Blum's receipt shows this cotton was received by him from Mrs. Harrison, and not from her husband. The mortgage debt was the only one

that he had any claim on her, legal or moral, to pay ; and she and her husband both positively testify, upon oath, that the forty-six bales of cotton were delivered for this purpose ; and it is admitted by Blum that the price realized from the cotton was more by several hundred dollars than the mortgage debt. It is true that Blum denies this ; but the recitals of the mortgage and the receipt for the cotton tend strongly against his denial, and Harrison flatly contradicts him. I cannot say that the testimony of the Loebs overturns this contradiction. It is not above suspicion that it was Blum's purpose to transfer as much of the insolvent husband's debts as possible to the wife's shoulders ; and the Loebs seem to have been not unwilling to help him ; and, as usual, the woman being the weaker party, is driven into a corner, to be fleeced for the husband's benefit. The law forbids this. Her property is *secured* to her, to be *used* for her own benefit, and the husband and his creditors have no right to divert it from this just purpose, save to apply it to the support of *herself* and *her* family, which may include the husband himself. Rev. Code, §§ 2372, 2374, 2376. The law requires of him, as her trustee, a " discreet and proper management of her estate," else he is subject to removal. Rev. Code, § 2383. And those who attempt to use him, when dealing with his wife's property, for purposes beyond his powers, have little right to complain if they fail. I think, therefore, that the evidence in proof of the satisfaction of the mortgage debt was correctly understood and interpreted by the learned chancellor in the court below,

The decree of the court below is, therefore, affirmed with costs.