(88 South. 681)

DALLAS COMPRESS CO. v. LIEPOLD et al.
(2 Div. 723.)

(Supreme Court of Alabama. April 21, 1921.)

1. Covenants ⬤⟳102(1) — Warranty is not breached until eviction.

A general covenant warranting title is in effect a covenant for quiet enjoyment, and is not breached until there has been an eviction, actual or constructive.

2. Covenants ⬤⟳102(1)—Warranty of fee by life tenant is not breached until claimed by remainderman.

A warranty of fee-simple title by one who owned only an estate for the life of another is not breached until the remainderman, after the death of the life tenant, took possession of the property or compelled the purchaser to buy the outstanding title to avoid dispossession, as the purchaser had a right to do.

3. Executors and administrators ⬤⟳222(1) — Contingent claim for breach of warranty need not be presented to preserve from bar of statute of nonclaim.

A claim for breach of warranty of fee-simple title by the owner an estate for life only is not an accrued claim which is required by Code 1907, § 2590, to be presented against the estate of the grantor to preserve it from the bar of that statute.

4. Executors and administrators ⬤⟳222(1)— Liability on warranty fee in conveyance by tenant for life of another is contingent, not absolute.

The liability of the grantor who owned estate for the life of another on his covenant of warranty in fee is contingent only so as not to be within the statute of nonclaim, Code 1907, § 2590, during the life of the life tenant, though the termination of the life estate is certain, since it is not certain the remaindermen will exercise their right of eviction.

5. Covenants ⬤⟳65, 67—Warranty runs with the land.

A covenant of warranty or for quiet enjoyment, while a personal obligation, runs with the land into the hands of a successor of the grantee.

6. Covenants ⬤⟳27—Covenant to "successors" of corporation held to include assigns.

Where a conveyance of land was made to a corporation, "its successors and assigns," a covenant of warranty in fee to the corporation and its "successors" was not limited to those who succeeded to the corporate character of the grantee, but was intended to run in favor of assigns as well.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Successor.]

7. Covenants ⬤⟳21—Construed against covenantor.

If the terms used in the covenant of warranty are equivocal, they should be construed against the covenantor.

8. Descent and distribution ⬤⟳128—Covenantor's heirs not bound where not named.

Where the covenantor of warranty did not assume to bind the covenantor's heirs, the common-law rule that imposed liability upon the heir in appropriate cases where the heir was named in the instrument is without application.

9. Covenants ⬤⟳84—Grantee in valid voluntary conveyance by covenantor not liable for breach of covenant.

Where a tenant for life of another, who conveyed the property in fee by warranty deed, voluntarily conveyed other property to a niece, by valid conveyances, the niece did not thereby become liable for the breach of the covenant of warranty after the death of the grantor and final settlement of his estate, nor was the land conveyed to her chargeable therewith.

10. Fraudulent conveyances ⬤⟳181(1)—Voluntary conveyance is voidable only.

A voluntary conveyance by a warrantor of other property is at most voidable, not void, and

---

a creditor who seeks to subject it to his demand for breach of the warranty must invoke judicial power to appropriate the subject of such conveyance as the property of the warrantor.

**11. Descent and distribution ⊜≈119(1)—Wills ⊜≈827—Creditor's rights against decedent's estate are statutory.**

The 'right of one who has ·a claim, accruing after the death of his debtor and the administration of the debtor's estate and discharge of the executor or administrator, to enforce the satisfaction of his demand, is governed by statute.

**12. Descent and distribution ⊜≈128—Wills ⊜≈ 839—Contingent claims, not within statute of nonclaim, are charges on the land.**

Under Code 1907, § 2596, charging all property of decedent with the payment of his debts, the liability of a decedent on a covenant of warranty which did not accrue until after the administration of his estate was completed is a debt which may, by seasonable proceedings, be made a charge on the property which passed to the heirs or devisees.

**13. Descent and distribution ⊜≈138—Wills ⊜≈ 847(1)—Heirs or devisees are not personally liable for decedent's debts, but enforcement must be in equity suit to subject property.**

The heirs, devisees, or distributees are not personally liable for the debts of a decedent even to the extent of the assets received, but such debts may be enforced against the property distributed only by an equitable proceeding to appropriate such property to the payment of the debt.

**14. Executors and administrators ⊜≈429—Suit to subject property to debts of testator cannot be brought against executor of devisee.**

In a suit by a covenantee to charge the lands devised by the covenantor for breach of the covenant after the settlement of the covenantor's estate, no money judgment could be recovered against the devisee, and therefore the executors of the devisee are not proper parties to such suit, where it appeared that such devisee had devised the land to others to whom it had passed.

**15. Equity ⊜≈223—Demurrer is not proper method to test measure of damages asserted.**

Demurrer is not the appropriate method for testing the measure of damages asserted in a suit in equity.

**16. Covenants ⊜≈130(4)—Consideration paid, less value of life estate, may be recovered for breach of warranty of fee by tenant for life.**

In a suit for breach of a warranty of the fee by one who owned only an estate for the life of another, the complainant can recover the consideration paid, less the value of the life estate, with interest thereon from the date of eviction, but cannot recover consequential damages nor the value of improvements.

Appeal from Circuit Court, Dallas County; B. M. Miller, Judge.

Bill by the Dallas Compress Company against Julius Liepold and others to subject certain property to the satisfaction of a judgment and for general relief. The bill was filed against Julius Liepold and Samuel A. Summers as executors of the last will and testament of Bertha Liepold and as individuals. Jeannetta Summers was also made a party respondent. From decree sustaining demurrers to the bill, complainant appeals. Affirmed.

Keith & Wilkinson, of Selma, for appellant.

There is equity in the bill of complaint. Sanders v. Godley, 23 Ala. 473; ·Pomeroy, Equity (4th Ed.) § 747; Higgins v. Johnson, 14 Ark. 309, 60 Am. Dec. 544; 15 Corpus Juris, pp. 12, 57, § 77(2); Id., p. 1261, § 87(5); Id., p. 1262, § 89C; Deason v. Findley, 145 Ala. 407, 40 South. 220.

The claim of the complainant for breach of warranty of quiet enjoyment and possession did not accrue during the life of Edward Ikelheimer, but, to the contrary, not until long after the estate of Ikelheimer was finally settled in the probate court was its possession and enjoyment of the property disturbed; so, therefore, it could not be presented against his estate, and is therefore not barred by the statute of nonclaim. Morse v. Aldrich, 42 Mass. (1 Metc.) 544; Andrews v. McCoy, 8 Ala. 920, 42 Am. Dec. 669; McClure v. Dee, 115 Iowa, 546, 88 N. W. 1093, 91 ᴬAm. St. Rep. 181; Hamblin's Case, 57 Kan. 393, 46 Pac. 705, 57 Am. St. Rep. 334; McDowell v. Brantley, 80 Ala. 173; Geiszler v. De Graaf, 166 N. Y. 339, 59 N. E. 993, 82 Am. St. Rep. 659; Harmon v. Dorman, 8 Ind. App. 461, 35 N. E. 1025; Oliver v. Bush, 125 Ala. 534, 27 South. 923.

The warranty of title and quiet enjoyment, contained in the deed from the said Ikelheimer to the Selma Press‚& Warehouse Company, is sufficient to pass the warranty on to the complainant, its successor in title. Cyc. vol. 37, p. 512, note 49; Black's Law Dictionary.

The estate of the said Bertha Liepold, or rather that part sought here to be charged with the claim which the appellant was compelled to pay, in. order to acquire the outstanding superior title, is liable for the damage complained of. Dale v. Shively, 8 Kan. 276; Anderson v. Knox, 20 Ala. 156; Corpus Juris, vol. 15, p. 1324, par. 228; Dickson v. Desire's Adm'r, 23 Mo. 151, 66 Am. Dec. 661; Sayre v. Sheffield, 106 Ala. 440, 18 South. 101; Werner v. Wheeler, 127 N. Y. Supp. 158, 142 App. Div. 358; Cobb v. Klosterman, 58 Or. 211, 114 Pac. 96; Bibb v. Freeman, 59 Ala. 612; Wilder v. Tatum, 15 Ala. App. 474, 73 South. 833; Helm v. Griffith, 17 Ala. App. 122, 82 South. 570.

Pitts & Leva and J. R. Satterfield, all of Selma, for appellees.

Where a creditor files a bill to subject property voluntarily conveyed, a statute of nonclaim is an available defense. 51 Ala.

⊜≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

543; 85 Ala. 57, 4 South. 140. This defense may be made by demurrer or motion to dismiss. 57 Ala. 92; 52 Ala. 124; '80 Ala. 173. The statute makes' no exceptions. 67 Ala. 129; 69 Ala. 272; 69 Ala. 575; 72 Ala. 315; 80 Ala. 177. Devisees have an equal right with the personal representatives to insist upon the statute as a defense. 68 Ala. 253; 158 Ala. 333, 48 South. 589, 132 Am. St. Rep. 32. A claim may fall within the operation of the statute of nonclaim, although no action on it has accrued. 82 Ala. 282, 3 South. 11; 10 Ala. 26; 5 Ala. 610. Ikelheimer became a creditor the day he executed the deed. 20 Ala. 732; 59 Ala. 612; 64 Ala. 405; 65 Ala. 39; 66 Ala. 381; 85 Ala. 435, 5 South. 138; 109 Ala. 536,'20 South. 370; 100 Ala. 559, 13 South. 545. Only the successors, not the assigns, of the Selma Press & Warehouse Company can take advantage of the covenant of warranty. 3 Washb. Real Property, 508; 4 Ala. 21; 14 Ill. 168; 130 N. C. 100, 40 S. E. 984, 61 L. R. A. 878; 195 Ill. 257, 63 N. E. 105. The estate of Bertha Liepold is not liable, and her personal representatives are not proper parties respondent. Section 2590, Code 1907.

McCLELLAN, J. This bill was filed by appellant against appellees. The demurrer of the respondents was sustained by the court. The theory and design of the bill will be sufficiently indicated by the facts to be recited, summarily, together with the prayer for relief.

On April 3, 1884, Edward Ikelheimer sold and conveyed to the Selma Press & Warehouse Company the lots described in the bill. The deed bore these covenants:

"And the said party of the first part [Ikelheimer] hereby covenants and agrees to and with the said party of the second part, that he is seized in indefeasible fee of the above-granted premises; and that the title thereto and the quiet possession and enjoyment thereof as against all persons whatsoever lawfully claiming the same unto the said party of the second part, and its successors, he hereby warrants and will forever defend."·

On April 19, 1904, the Selma Press & Warehouse Company conveyed the property in question to the Dallas Compress Company, the complainant (appellant). That conveyance bore these covenants:

· "And said party of the first part does hereby covenant with said party of the second part, its successors and assigns, that it is lawfully seized in fee of the aforegranted premises; that they are free from all incumbrances; that it has good right to sell and convey the same to said party of the second part, as aforesaid; and that it will warrant and defend the same to said party of the second part, its successors and assigns, forever, against the lawful demands of all persons."

It is averred in the bill (third paragraph) that on July 28, 1887, Edward Ikelheimer, by deed reciting love and affection and one dollar as a consideration, conveyed other real property in Selma to Bertha Dublon (the grantor's niece), who afterwards married Julius Liepold, one of the respondents. The exhibit (C) of this conveyance shows it was executed and acknowledged, not in 1887, as erroneously stated in the bill, but on July 28, 1877, 10 years earlier and prior to the date of the conveyance to the Selma Press & Warehouse Company. It was filed for record on February 7, 1888.

On October 21, 1887, Ikelheimer conveyed to Bertha Dublon (the grantor's said niece) another lot or parcel of land in Selma, the consideration being recited as love and affection and $1. This conveyance was filed for record February 7, 1888.

Edward Ikelheimer died in the city of Selma on, to wit, January 18, 1888, leaving a last will, which was promptly, duly probated. In this will the testator devised to his said niece, Bertha Dublon, other real property in Selma. Bertha Dublon Liepold, died in April, 1919, devising the aforesaid real property to Julius Liepold and Jeannetta C. Sommers. At the time of her death Bertha Dublon Liepold was in possession of the real property described in the deeds mentioned above, and that devised to her by the will of Edward Ikelheimer; and Julius Liepold and Jeannetta C. Sommers have succeeded; under her will, to her possession of these properties.

The bill avers that' at the time Edward Ikelheimer executed the conveyance to the Selma Press & Warehouse Company, in 1884, he in fact only owned the life estate of Marie L. Smith in the property conveyed to the Selma Press & Warehouse Company, and hence only conveyed to that company the said life estate; and Marie L. Smith (the said previous owner of the life estate) having died in September or October, 1919, the bill avers that the "covenant of warranty of title or· covenant for the possession and quiet enjoyment contained in the said deed from Edward Ikelheimer to the Selma Press & Warehouse Company, through whom [which] your orator deraigned title, * * ·*' were broken or breached to the damage of your orator in the sum of $20,000.00," the antecedent allegation being that upon the death of Marie L. Smith, the remainderman, J. Q. Smith, demanded the possession of the property, whereupon the Dallas Compress Company, from obvious necessity, purchased from J. Q. Smith, his superior, paramount title in remainder, which had been established in the litigation reported in 190 Ala. 423, 67 South. 289; 195 Ala. 534, 70 South. 662; 202 Ala. 193, 79 South. 565, for the sum of $15,000 in cash. It is also averred that the complainant duly and seasonably filed in the office of the judge of probate a

claim for $20,000 against the estate of Bertha Dublon Liepold, deceased, noting in the claim filed that the said Bertha was the donee or devisee, or both, from Edward Ikelheimer of the property before mentioned. The prayer, so far as presently important, is as follows:

"That this cause be referred to the register of this court, or that it be determined by the court, the damage done your orator by the breach of said warranty of title or covenant for possession and quiet enjoyment, and that a judgment be rendered against the estate of the said Bertha Liepold for such sum as may be found due to your orator therefor.

"That the said described property belonging to the said Bertha Liepold at the time of her death and conveyed to her by deed of gift and by will devised to her by the said Edward Ikelheimer, or such part thereof as may be necessary, be subjected to the satisfaction of said judgment; and that a lien be fixed and declared on said property, and that the same be sold under the orders and direction of this court for the satisfaction of such damages or judgment as may be determined.

"And if your orator has not asked for the proper relief, it hereby submits itself to the jurisdiction of this honorable court, and offers to do equity towards all parties to this suit, and prays for such other, further, general, special, and appropriate relief as the nature of the cause demands and as to your honor may seem meet and proper, for which it is in duty bound, to ever pray," etc.

The demurrer, through special grounds, addressed to the bill as a whole (in addition to that asserting a want of equity in the bill), are:

"(2) That it does not appear from the bill of complaint that the claim of complainant was ever presented against the estate of said Edward Ikelheimer, and no legal reason is shown why such presentation was not made.

"(3) That the warranty of title and quiet enjoyment in the deed from said Edward Ikelheimer to said Selma Press & Warehouse Company is limited and restricted to said grantee and its successors, and the complainant is neither the grantor nor its successor."

The fourth ground of the demurrer, addressed to a part of the bill, is:

"That it does not appear from the bill of complaint that said Bertha Liepold or her executors were ever under obligation to pay said claim."

The fifth ground of the demurrer, addressed to the feature of the bill claiming $20,000 as damages for the breach averred, is:

"That the measure of damages, if any, is the amount of money paid to said Edward Ikelheimer by said Selma Press & Warehouse Company [i. e., about $2,600], with interest thereon from the date of the death of said Marie L. Smith."

[1] The basis of complainant's (appellant's) assertion of right to relief is the breach of the *warranty* of title, or for *quiet enjoyment* in the Ikelheimer deed of date April 3, 1884, to the Selma Press & Warehouse Company, its grantor, resulting from the fact that the warehouse company's grantor held and could convey only a life estate, not the fee, as was the design of his deed. Ikelheimer's grantee went into rightful possession of the property; continued so until 1904, when his grantee conveyed to the complainant (appellant), which thereupon went into rightful possession, and thereafter remained in rightful possession until the falling in of the life estate of Marie L. Smith, in September or October, 1919, whereupon the right of the established remainderman to the possession became perfected, and complainant was obliged to surrender possession or purchase the outstanding title of the remainderman. A general covenant warranting title is, in essence and effect, a covenant for quiet enjoyment. Caldwell v. Kirkpatrick, 6 Ala. 60, 62, 41 Am. Dec. 36; Oliver v. Bush, 125 Ala. 534, 27 South. 923; Musgrove v. Cordova Land Co., 191 Ala. 419, 421, 67 South. 582, among others delivered here. The general covenant of warranty being equivalent to a covenant for quiet enjoyment, "an assurance against the consequences of a defective title" (6 Ala. 62, 41 Am. Dec. 36), it is prospective in operation. Thomas v. St. Paul's Church, 86 Ala. 138, 144, 5 South. 508; Durbin v. Shenners, 133 Wis. 134, 113 N. W. 421. Such a covenant is not breached until there has been an eviction, actual or constructive. Caldwell v. Kirkpatrick, supra; Oliver v. Bush, supra; Musgrove v. Cordova Land Co., supra, among others.

[2] The possession of the lots having been taken by the grantee in the deed from Ikelheimer, on April 3, 1884, and continuing in that grantee's grantee, this complainant, under the conveyance to it of date April 19, 1904—all in virtue of the life estate of Marie L. Smith thereby in fact alone conveyed—the covenant of warranty of title or for quiet enjoyment was not breached until the eviction of the Dallas Compress Company (complainant) upon or in consequence of the expiration of right of complainant to the possession of the premises, viz. at the death of the life tenant (Mrs. Smith) in September or October, 1919, whereupon complainant faced the absolute necessity to surrender to the title paramount of the remainderman, or purchase that outstanding superior title, the latter of which alternatives the complainant competently elected to do. The presence in Ikelheimer of title to the life estate in and of actual possession of this property, with both of which his grantee and his grantee's grantee (complainant) became, in proper order, invested and enjoyed pending the life estate, discriminates many of the cases where the warrantor had neither title nor possession in or of the subject of the warranty.

[3] Since the breach of the warranty charged in this bill was *prospective* in operation, and title to the life estate and the possession passed to the warehouse company, then to the complainant, there was no breach of the covenant until eviction (actual or constructive), no disturbance of the possession and enjoyment of the premises until the falling in of the life estate. Oliver v. Bush, 125 Ala. 534, 27 South. 923, and author, supra. Until eviction the claim for breach of such warranty was necessarily contingent; and hence not such an accrued claim as could be or was required by Code, § 2590, to be presented in order to preserve it against the bar of that statute of nonclaim. McDowell v. Jones, 58 Ala. 25, 31, et seq.; King v. Moseley, 5 Ala. 610; Cockrill's Adm'r v. Hobson, 16 Ala. 391; Griswold v. Bigelow, 6 Conn. 258, 263, 264; Godley v. Taylor, 14 N. C. 178; Dugger v. Oglesby, 99 Ill. 405. The class of claims contingent to which the breach of the covenant here asserted belongs, was thus discriminatively defined in McDowell v. Jones, supra:

"There may be contracts, involving only contingent liability, or dependent upon the future performance, or happening of some particular event, of some act or duty, by the person to whom the promise is made, or by some other person, not falling within the statute [i. e., nonclaim]. Or, there may be claims not within its operation. because they do not accrue, until the doing of some act by another, *after the grant of administration.* Where the act is done, and the claim has accrued, the bar of the statute is computed, not from the grant of administration, but from the doing of the act, and the accrual of the claim." (Italics supplied.)

[4] To effect the breach of the warranty here charged there must have been an eviction, actual or constructive. This act or action, disturbing the enjoyment of the premises, must have been taken by another party, paramountly, adversely interested to the beneficiary (in possession) of the warranty of the title or for quiet enjoyment. This act of eviction could not take place or serve until the termination of the life estate, an event that actually intervened upwards of 30 years after the death of the warrantor (Ikelheimer) and 28 years after the final settlement of the estate of Ikelheimer. The fact that the life estate would certainly determine, and thereupon afford, the basis for the exercise of the evictory right essential to a breach of the covenant charged in this bill, did not operate to characterize the claim that might arise as other than a *contingent* claim, not within the statute of nonclaim. (Section 2590) Rawle on Covenants (5th Ed.) § 303, p. 507. The death is inevitable, and the termination of this life estate was likewise inevitable; it could not be affirmed from that contracted premise that eviction (actual or constructive) would inevitably follow, eviction being essential to the creation of any liability under the warranty. Rawle, ubi supra; Mead v. Stackpole, 40 Hun (N. Y.) 473, 476; Oliver v. Bush, supra—in both which decisions the pronouncement, in substance and effect, is that the *cause of action* (not the mere remedy for a cause of action already existing the payment or satisfaction of which is postponed) only comes into existence when eviction, actual or constructive, has vitalized the assurance the warranty gives for quiet enjoyment into a liability. The claim's imposition of liability being dependent upon an event that might never occur—to be afforded by action on the part of the possessor of the paramount title—it was a *contingent* claim, and not within the statute of nonclaim, section 2590, or its similar predecessors in force when Ikelheimer's estate was administered. The operation of this warranty, its assurance and consequent, contingent liability, was projected by the warrantor beyond his death and beyond the period designed by the statute of nonclaim to bar claims, within its operation, that are not presented. This a warrantor may lawfully do; and, if he does so, the assurance thereby given is not concluded or defeated by the statute of nonclaim, where, as in this instance, the liability, theretofore, contingent, is created, and is perfected alone by an act that intervenes after the warrantor's death and the administration of his estate has been fully accomplished.

The decisions of this court, cited on brief for appellee in this connection, do not conclude to a different effect when their facts and the statutes there considered, or either, are interpreted in the light of these discriminative factors. This conclusion will be illustrated. In Farris v. Stoutz, 78 Ala. 130, the court defined the obligation there under review as being an absolute duty to pay, created when made, at a postponed, yet certain to happen event, viz. the death of a certain person. The case of Bibb v. Freeman, 59 Ala. 612, construed *"creditor"* within the contemplation of the different statute there considered, as including "whoever has or *may have* a claim or demand upon a contract in existence at the time the voluntary conveyance is executed" (Italics supplied); whereas the statute of nonclaim (section 2590) does not operate upon contingent claims of the character here involved. The cases of Fearn v. Ward, 65 Ala. 33, 39, Anderson v. Anderson, 64 Ala. 403, Jenkins v. Lockard, 66 Ala. 377, 381, and Gannard v. Eslava, 20 Ala. 732, are similar to Bibb v. Freeman, supra. In M. & M. Ry. Co. v. Gilmer, 85 Ala. 422, 5 South. 138, the covenant considered was breached as soon as made; and Gilmer was held to be a *creditor* under the particular act authorizing the consolidation of the railroad companies named therein. In Sayre v. Sheffield Co., 106 Ala. 440, 18 South. 101, the covenants involved were of seizin, good right

to convey, and against incumbrances, broken when made, and not the character of prospectively operating covenant that is here declared on. In Fretwell v. McLemore, 52 Ala. 124, the claim had in fact *accrued* pending administration.

The bill was not subject to the second ground of demurrer, quoted before in this opinion.

The third ground of the demurrer, reproduced hereinabove, brings into question the right of this complainant (appellant) to assert the breach of Ikelheimer's warranty as averred in the bill, and so under the theory that the warranty relied on was limited, restricted to his grantee (Selma Press & Warehouse Company), and that corporation's *successors* only; that is to say, the warranty given did not include the *assigns* of Ikelheimer's grantee, the complainant being but an *assign* of the Selma Press & Warehouse Company, and not the *successor* thereof. · This contention cannot be sustained.

[5] It has been long decided in this court that a covenant of warranty, or—its equivalent—for quiet enjoyment while modernly a personal obligation, "runs with the land"; that is, is so allied with the estate as to attend it into the hands of the successor to the interest in the realty, and is enforceable by the grantee in possession at the time of breach. Caldwell v. Kirkpatrick, 6 Ala. 60, 62, 41 Am. Dec. 36; Claunch v. Allen, 12 Ala. 159; Gilmer v. M. & M. Ry. Co., 79 Ala. 569, 572, 58 Am. Rep. 623; Gunter v. Williams, 40 Ala. 561, 572; 15 C. J. p. 1259; Deason v. Findley, 145 Ala. 407, 40 South. 220.

[6, 7] Furthermore, reading the word "*successors*" in the before-quoted warranty clause in the deed from Ikelheimer to the Selma Press & Warehouse Company—in connection with the completely comprehensive conveyance to the warehouse company, "its successors and assigns," of the lots therein described, and all rights, etc., pertaining thereto, the term "*successors*" must be held to include the *assigns* of the grantee as within the design of Ikelheimer when he gave the assurance the covenant in question contemplated. Under the terms of this conveyance it would be unreasonable to suppose that the warrantor intended to create a warranty restricted to the *successors* only to the corporate character or control of his grantee, the Selma Press & Warehouse Company. Its design was to attach the warranty here in question to the estate the conveyance of 1884 purports to convey, and to invest the *successors* of the warrantor's grantee with the right to rely upon and avail of the covenant as fully as if the words "*assigns*" had accompanied the covenant. If we assume (for the occasion only) that the scope and effect of this term *successor* is equivocal—a concession that would unduly favor the appellees in view of the whole instrument, it should be construed

against the covenantor (2 Devlin [3d Ed.] § 883; 15 C. J. p. 1219); and hence that it comprehended a subsequent grantee succeeding to the estate purported to have been granted by Ikelheimer.

[8] Aside from the general prayer for relief, we come to consider the special prayer. In substance, this prayer seeks a money judgment against the estate of appellees' testatrix—commensurate with ·the ascertained· damages resulting to complainant from the breach averred—and the satisfaction of such judgment out of the real estate conveyed and devised, or either, by the warrantor (Ikelheimer) to Mrs. Liepold as alleged in the bill. The conveyance by Ikelheimer to the Selma Press & Warehouse Company (dated April 3, 1884), in which the warranty asserted to have been breached appears, did not assume to bind the warrantor's heirs in the premises; hence the common-law rule that imposed liability upon the heir in appropriate cases where the heir was named in the instrument is without application (if not inapplicable otherwise) in the present instance. Rawle on Covenants (5th Ed.) §§ 309, 310.

It may also be observed with respect to the real estate passing to Mrs. Liepold under the will of Ikelheimer that she was there a *devisee*, not an heir. Rawle, § 311.

[9] It is to be particularly noted that, according to Exhibit C, the voluntary conveyance of the real estate therein described was effected in 1877, many years before the warranty here in question was even given. The validity, the bona fides, of this conveyance (Exhibit C) is not contested in the present bill; but, quite to the contrary, the bill's theory consists alone with an affirmation of its validity.

[10] Ikelheimer's voluntary conveyance of the real estate described in Exhibit D, to Mrs. Liepold, was effected in 1887, three years after the warranty here in question was given. The present bill does not proceed on the theory that this conveyance was a fraud on Ikelheimer's covenantee or its successors to the estate granted, and might, therefore, be cancelled; but to the contrary, recognizes its validity. In any event, this voluntary conveyance was at most *voidable*, not void; and a creditor who would subject it to his demand must invoke the judicial power to appropriate the subject of such conveyance *as the property of the debtor*. McCurdy v. Kenon, 178 Ala. 345, 356, 59 South. 489. Neither the facts averred nor the theory of this bill consist with the doctrine indicated; and hence the real estate described in the voluntary conveyance of 1887 (Exhibit D) affords no basis for complainant's relief or satisfaction on the bill as now constructed. Appellant cites and relies upon Higgins v. Johnson, 14 Ark. 309, 60 Am. Dec. 544, as concluding to liability against the estate of Mrs. Liepold as *grantee* in the voluntary conveyance of 1887 (Exhibit D).

There James Erwin, the covenantor, was averred to have been insolvent, and also his conveyances, subsequently made, were assailed for fraud specifically alleged. That decision does not hold nor purport to decide that a grantee in a voluntary conveyance is in the common-law category of an heir or devisee with respect to liability, to the extent of assets received, for damages resulting from the effected breach, after death, of the ancestor's warranty running with the land. Sanders v. Godley, 23 Ala. 473, is readily discriminated by its facts. That case concerned the obligations of *légatees* to restore assets or their value in the circumstances there recited, and does not invite or support the proposition to which appellant would refer its authority in this particular connection.

It results that the voluntary conveyances (Exhibits C and D) by the warrantor to Mrs. Liepold must be laid out of view in passing upon the fourth ground of the demurrer, these conveyances contributing nothing to the theory or substance of the right the appellant would assert. The cause, and the relief sought, is to be determined by the status made by the death of the warrantor (Ikelheimer) and his will as established, together with the primary fact of breach of warranty after the warrantor's death, and after his estate had been administered and his executor discharged in 1891. Statements of the source, circumstances, and extent of the liability the laws of England imposed upon heirs and devisees to satisfy the demand resulting from breach of the ancestor's covenant of title or for quiet enjoyment may be found in Rawle on Covenants (5th Ed.) §§ 309, 310, et seq., and notes thereto; Freeman's elaborate annotation to Crawford v. Turner, 58 W. Va. 600, 52 S. E. 716, 112 Am. St. Rep. p. 1017 et seq.

[11] In Alabama, as generally elsewhere in this country, the right of one who has a claim *accruing after* the death of his debtor, and after administration of the debtor's estate has been completed and the executor or administrator finally discharged, to enforce the *satisfaction* of his sound, nonbarred demand is dependent upon, is affected by, statute.

[12] Our Code, § 2596, as did its predecessors, provides:

"All property of the decedent, except as otherwise provided, is *charged* with the payment of his debts, and, if necessary, may be sold for that purpose." (Italics supplied.)

In Banks v. Speers, 97 Ala. 560, 562, 11 South. 841, 842, Stone, C. J., writing, it was said:

"So, lands under our system are, in the fullest sense, assets of the decedent's estate for the payment of his debts."

That a sound, nonbarred claim, accruing after the death of the contractor and after fully accomplished administration on his estate, is a debt of the decedent within the purview of the statute, is certain; and, subject to its seasonably sought discharge and satisfaction property of the decedent (not exempt) passes to the heir, devisee, distributee, or legatee.

The statutory system for appropriating both real and personal property, not exempt, to the payment of *presented* "accrued" claims (Code, § 3590) against estates of decedents in the course of administration by executors and administrators does not restrict the right of the holder of such a claim to invoke and enforce the charge the statute (section 2590) imposes. The *charge* thereby imposed is not limited to the method of administration the system provides. That system could not be soundly held to be exclusive in respect of claims that are not subject to the statute of nonclaim (section 2590) upon which rests, in the main, the statutory system for the appropriation of personal and real property to the decedent's obligations of debt, as well as the related duties and exemptions of executors and administrators in this jurisdiction.

[13] In this state there is no statute imposing personal liability upon the heir, devisee, legatee, or distributee for the debt of a decedent, even to the extent of assets received. Here the only possible theory for accountability of such beneficiaries results from and is limited by the reception of assets which were received subject to the charge the statute (section 2596) imposes; and necessarily this obligation is not personal in the sense of a primary promise to pay the decedent's debt. It is consequential only, equitable in nature, and, in this jurisdiction, may be enforced in a court of equity, through its processes for appropriating or devoting the subject of a charge to the purpose of its imposition. Rohrbaugh v. Hamblin, 57 Kan. 393, 46 Pac. 705, 57 Am. St. Rep. 334, 336, 337; Chitty v. Gillett, 46 Okl. 724, 148 Pac. 1048, L. R. A. 1916A, 1181, et seq.

Neither the decision nor pronouncements made in Zimmerman Mfg. Co. v. Wilson, 147 Ala. 275, 279, 40 South. 515, conclude to a view inconsistent with that here taken. Indeed, the approving citation there of Russ v. Alpaugh, 118 Mass. 369, 19 Am. Rep. 464, 468, manifests a purpose to sanction the doctrine to which the cause at bar is referred and subjected. Furthermore, it appears that administration on the estate of Mrs. Wilson, deceased, had not been fully accomplished, if undertaken at all, at the time the breach charged occurred—a material factor discriminating that cause from the one now under consideration.

[14] It results that complainant's claim for damages for the consummated breach of Ikelheimer's covenant is not an obligation, a debt of the estate of Bertha Dublon Liepold, deceased, and hence the complainant is not entitled to a money judgment against her

executors; and, in consequence, the feature of the special prayer directed to that end is ill founded. It appears from the averments of the bill that real estate devised to Mrs. Liepold by Ikelheimer has passed, under her will, to her devisees, Julius Liepold and Jeannetta C. Sommers; and hence is not committed to or retained by Mrs. Liepold's executors for any purpose. In these circumstances, these executors are not proper parties to this cause. Of course, Mrs. Liepold's devisees of real estate devised to her by Ikelheimer are necessary parties. The fourth ground of the demurrer was well directed; and this alone justified the decree sustaining the demurrer.

[15] Demurrer is not the appropriate method in this state for testing the *measure* of damages asserted in pleading at law. The like rule would seem to apply in equity. The fifth ground of the demurrer, assuming to question the measure of damages asserted in the bill, could not be soundly sustained.

[16] In promotion of the cause to final disposition it may be observed that for the partial breach of covenant of warranty or for quiet enjoyment, alleged in this bill, the complainant may recover the "consideration money, less the value of the life estate," with interest thereon from the date of eviction, actual or constructive. Copeland v. McAdory, 100 Ala. 553, 560, 13 South. 545; Freeman's annotation, 99 Am. Dec. 78, cited in Copeland v. McAdory, supra, where it was further affirmed that neither "consequential damages" nor the "value of improvements" are elements of the damages recoverable.

There is equity in the bill. The general prayer, if not a feature of the special prayer, invokes the relief and remedy to charge the real estate devised by Ikelheimer to Mrs. Liepold, and by her devised to the individual respondents. There is, however, the defect in the bill pointed by the fourth ground of demurrer. For that reason the decree is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.