HENRY HARKINS, Plaintiff, *v.* CARRIE V. PROVENZO, as
Administratrix of NICHOLAS PROVENZO, Deceased,
Defendant.

(Supreme Court, Erie Special Term, July, 1921.)

Actions — survival of — personal injuries — personal injuries sus-
tained by drinking whiskey do not survive the death of
wrongdoer — Act of Nov. 21, 1918, chap. 212, § 1, 40 Stat.

The courts look to the substance of a matter and personal in-
juries though alleged to have grown out of a contract of pur-
chase and sale still remain injuries to the person as distin-
guished from injuries to property.

An action for personal injuries alleged to have been sustained
as the result of drinking whiskey sold by defendant's intestate
to plaintiff as a beverage in violation of the Federal statute
(Act of Nov. 21, 1918, chap. 212, § 1, 40 Stat.) which declares
that after June 30, 1919, " it shall be unlawful to sell for bever-

age purposes any distilled spirits," does not survive the death of the alleged wrongdoer and a demurrer to the complaint will be sustained.

DEMURRER by defendant to plaintiff's complaint on the ground that it fails to state a cause of action.

Palmer, Garono, Houck & Wickser, for defendant in support of demurrer.

Saperston, McNaughtan & Saperston, opposed.

WHEELER, J. The complaint is as follows:

"That during December, 1919, the above named Nicholas Provenzo, defendant's intestate, was the holder of a liquor tax certificate under the laws of the State of New York and was engaged in the sale and traffic of spirituous liquors. That between the first day of December, 1919, and the 18th day of December, 1919, plaintiff purchased from defendant's intestate at his place of business in the city of Buffalo, N. Y., certain spirituous liquors, to wit: gin and whiskey, which said liquors plaintiff did drink while upon the premises of defendant's said intestate and which said liquors were sold as a beverage to be drunk on said premises by plaintiff and for which plaintiff did pay defendant's intestate. That said whiskey contained wood alcohol or some other poison and as a result of drinking the said whiskey by plaintiff he became seriously ill and as a result thereof plaintiff's eyes and the nerves thereof became affected and plaintiff has suffered the loss of his sight and become totally and permanently blind.

"That said wood alcohol or poison also affected and permanently injured plaintiff's entire nervous system.

"That said defendant's intestate warranted and

agreed that said liquor so sold to plaintiff was wholesome and fit for human consumption and plaintiff relying upon such warranty and agreement, drank and consumed said liquor as aforesaid.

" That as a result of said illness so caused plaintiff has suffered severe pain and discomfort and his entire nervous system has become affected and he has been deprived of his means of earning a livelihood and is likely to become a public charge and has been and will be compelled to pay out and expend money for medical and surgical treatment and hospital bills and the employment of persons to care for and attend to plaintiff's wants.

" That by reason of the foregoing plaintiff has been damaged in the sum of one hundred thousand dollars ($100,000.00).

" That on or about the 21st day of August, 1920, the said Nicholas Provenzo died and that on the 4th day of October, 1920, the above named Carrie V. Provenzo was duly appointed administratrix of said deceased by the Surrogate's Court of Erie County and is now acting as such.

" *Wherefore* plaintiff demands judgment against defendant for one hundred thousand dollars ($100,-000.00) besides costs."

The defendant contends that the complaint fails to state a cause of action in that the action is one for personal injuries, and the right of action does not survive the death of the wrongdoer. *Second*, that the transaction set forth in the complaint was an illegal one, prohibited by the Federal statute against the manufacture and sale of intoxicating liquors, and that the plaintiff at the time of the alleged purchase of the whiskey and gin referred to in the complaint was participating in the violation of the law and cannot therefore recover.

Does the action survive? I am of the opinion the complaint sets forth only an action for personal injuries. The fact that the injuries alleged grew out of an alleged contract of purchase and sale does not change the nature of the injuries alleged. They still remain injuries to the person as distinguished from injuries to property.

The courts look to the substance of the matter.

Thus in *Wade* v. *Kalbfleisch,* 58 N. Y. 282, which was an action for an alleged breach of a contract to marry sought to be revived against the executors of the promisor. The court there said: '' The form of the action is not material. The controlling consideration is, that it does not relate to property interests but to personal injuries.''

This case is cited with approval in *Riddle* v. *McFadden,* 201 N. Y. 215, 218, and in *Cregin* v. *Brooklyn Crosstown Railroad Co.,* 75 id. 192-196, cited in *Hegerich* v. *Keddie,* 99 id. 258, 269.

In *Cregin* v. *Brooklyn Crosstown Railroad Co., supra,* Judge Rapallo in his opinion said: '' Where an injury is done to the person of *the plaintiff* the pecuniary damage sustained thereby cannot be so separated as to constitute an independent cause of action, for the cause of action is single, and consists of injury to the person; the damages are the consequence merely of that injury and where by the terms of the statute such a cause of action abates, the character of the damages cannot save it.'' *Wyatt* v. *Hall's Portrait Studio,* 71 Misc. Rep. 199.

Holding then this action is in its essential nature one for personal injuries we pass to the consideration of the question as to whether it survives the death of the wrongdoer.

Section 120 of the Decedent Estate Law provides for the bringing of actions growing out of certain

wrongs or torts against executors and administrators. The section reads: " For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or after his death, by his executors or administrators, against such wrongdoer, and after his death, against his executors or administrators, in the same manner and with the like effect in all respects as actions founded upon contracts. This section shall not extend to an action for personal injuries, as such action is defined in section thirty-three hundred and forty-three of the code of civil procedure; except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death."

It is to be noted that this section specifically exempts from its operation *" actions for personal injuries, as such action is defined in section thirty-three hundred and forty-three of the code of civil procedure."*

Section 3343 referred to defines a " personal injury " as including " libel, slander, criminal conversation, seduction and malicious prosecution; also an assault, battery, false imprisonment, *or other actionable injury to the person either of the plaintiff, or of another."*

It consequently follows that if at common law the cause of action abates on the death of the wrongdoer the plaintiff cannot maintain this action.

That such actions abate is the rule of the common law which has not been modified in that respect by statute so far as actions of the nature of that now under consideration are concerned.

The subject has been fully and ably discussed by Chief Justice Ruger in *Hegerich* v. *Keddie,* 99 N. Y.

258. See, also, *Meekin* v. *Brooklyn Heights R. R. Co.,* 164 N. Y. 145; *Brackett* v. *Griswold,* 103 id. 425; *Lutz* v. *Third Avenue R. R. Co.,* 44 App. Div. 256; *Molloy* v. *Starin,* 134 id. 542.

It may well be that in form the action is based on an alleged contract as illustrated by the case of *Busch* v. *Interborough R. T. Co.,* 187 N. Y. 388. Nevertheless the action remains one to recover for personal injuries growing out of the breach of an alleged contract, but as we have seen the form of the action does not change its real nature, or modify the rule as to whether the cause of action abates or survives.

Plaintiff's counsel contends to the contrary and insists that the liability being predicated on violation of an alleged contract obligation the abatement of the cause of action does not occur.

Let us assume for the argument that the plaintiff's contention in that regard is correct, the plaintiff is still faced with the question of the validity of the contract alleged in the complaint.

The alleged contract of the sale of the whiskey in question was made while the act of congress forbidding the manufacture and sale of such beverages was in force. (Act of Nov. 21, 1918, c. 212, § 1, 40 Stat.) This act is entitled " An Act to provide further for the National security and defense by stimulating agriculture and facilitating the distribution of agricultural production and for other purposes." This act reads:

" After June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, for the purpose of conserving the man power of the Nation, and to increase efficiency in the production of arms, muni-

tions, ships, food, and clothing for the Army and
Navy, it shall be unlawful to sell for beverage pur-
poses any distilled spirits, and during said time no
distilled spirits held in bond shall be removed there-
from for beverage purposes except for export. After
May first, nineteen hundred and nineteen, until the
conclusion of the present war and thereafter until
the termination of demobilization, the date of which
shall be determined and proclaimed by the President
of the United States, no grains, cereals, fruit, or other
food product shall be used in the manufacture or
production of beer, wine, or other intoxicating malt
or vinous liquor for beverage purposes. After June
thirtieth, nineteen hundred and nineteen, until the
conclusion of the present war and thereafter until
the termination of demobilization, the date of which
shall be determined and proclaimed by the President
of the United States, no beer, wine, or other intoxi-
cating malt or vinous liquor shall be sold for bever-
age purposes except for export. The Commissioner
of Internal Revenue is hereby authorized and directed
to prescribe rules and regulations subject to the
approval of the Secretary of the Treasury, in regard
to the manufacture and sale of distilled spirits and
removal of distilled spirits held in bond after June
thirtieth, nineteen hundred and nineteen, until this
act shall cease to operate, for other than beverage
purposes; also in regard to the manufacture, sale, and
distribution of wine for sacramental, medicinal, or
other than beverage uses. After the approval of
this act, no distilled, malt, vinous, or other intoxi-
cating liquors shall be imported into the United
States during the continuance of the present war and
period of demobilization: Provided, That this pro-
vision against importation shall not apply to ship-

ments en route to the United States at the time of the passage of this Act.

"Any person who violates any of the foregoing provisions shall be punished by imprisonment not exceeding one year, or by fine not exceeding $1,000, or by both such imprisonment and fine."

So far as this action is concerned the gist of the prohibition is contained in the words "*it shall be unlawful to sell for beverage purposes any distilled spirits.*"

The contract alleged was in violation of the Federal statute. It was, therefore, an illegal and void agreement, and it is difficult to discover how such an illegal and void agreement can be made the basis of a cause of action, or how a valid implied warranty of quality and wholesomeness of the whiskey sold can be engrafted on a contract prohibited by law.

It is argued, however, by plaintiff's counsel, that the prohibition is against the *sale* and *not* against the purchase; that the punishment provided by the act is one against the seller, and not against the buyer, against the one who sells "distilled spirits" and not against him who drinks it. Granted, nevertheless this does not in our opinion change the case. Suppose a person had contracted with another to buy a quantity of "distilled spirits" for beverage purposes, and the seller had refused to deliver, the buyer certainly could not maintain an action against the seller for damages for refusal to deliver on the theory that the buyer was not prohibited from buying. The contract would still be an illegal contract unenforceable in law. Neither can the plaintiff in our opinion avail himself of any implied warranty of wholesomeness of the article sold in a contract declared by statute illegal.

Professor Williston in his work on Sales, section

668, states the rule as follows: " There can be no doubt that if a statute directly prohibits a contract of sale it cannot be enforced by the parties to it, and the imposition of a penalty is at least *prima facie* an implied prohibition of the transaction to which the penalty attaches. No distinction is made between things which are merely *mala prohibita* and things which are *mala in se*. Courts cannot go behind the reason for the legislative prohibition when the prohibition itself is clear." See, also, *Materne* v. *Harowitz*, 101 N. Y. 469; *Goodrich* v. *Houghton*, 134 id. 115; *Sirkin* v. *Fourteenth St. Store*, 124 App. Div. 384.

Owing to the very serious consequences to the plaintiff this court would have been glad to have reached a different conclusion, but is unable to do so without ignoring what it regards as established principles of law.

The demurrer is, therefore, sustained and a formal decision may be drawn accordingly.

Ordered accordingly.