[Civ. No. 20695. Second Dist., Div. Three. Aug. 25, 1955.]

JOHN C. RITCHIE et al., Appellants v. ANCHOR CASUALTY COMPANY (a Corporation), Respondent.

Abraham Gottfried for Appellants.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Respondent.

ASHBURN, J. pro. tem.*—Plaintiffs appeal from an adverse judgment rendered after a nonjury trial in an action upon an insurance policy issued to them by defendant Anchor Casualty Company. Plaintiffs John C. Ritchie and John Burroughs do business under the name of All American Nut Company, a business of processing and selling food products, including refined peanut oil. In August 1950 they bought from defendant a "comprehensive liability" policy, covering primarily liability from operation of automobiles; but it also contained certain riders, one of which is entitled "Products Property Damage Endorsement for Attachment to Comprehensive Liability Policy." So far as pertinent it provides: "In consideration of the premium at which this endorsement is issued, it is understood and agreed that the Policy to which it is attached is extended to cover the *liability imposed upon*

---

*Assigned by Chairman of Judicial Council.

*the assured by law* for damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident* and arising out of

"(1) the handling or use of or the *existence of any condition in goods or products* manufactured, sold, handled or distributed by the insured if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured." (Emphasis added.)

In April 1951, while the policy was in force, plaintiffs sold to Post Trading Company, a partnership consisting of Max Sorell and Irving Horowitz, 10 drums of refined peanut oil at a price of $1,324.80. The buyers refused to pay for same, claiming that the oil was rancid and they had been damaged through its use. Plaintiffs herein, through an assignee, A. F. Stark, sued to recover the purchase price and the buyer, Post Trading Company, not only resisted that claim but also filed a cross-complaint seeking recovery of damages from plaintiffs herein (as cross-defendants) in the sum of $12,140.80, alleged to have been proximately caused by use of the rancid oil in manufacture of certain food products (corn chips) for which use the oil had been purchased. Plaintiffs furnished the cross-complaint to defendant insurance company, called upon it to defend pursuant to that provision of the policy which provides: "It is further agreed that as respects insurance afforded by this policy the company shall (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . ." Defendant insurer refused to defend upon the ground that the causes of action alleged in the said cross-complaint were not within the coverage of the policy. After the Stark case had been partially tried (defendant refusing to have anything to do with it) plaintiffs made a compromise by which they dismissed the Stark complaint and Post Trading Company dismissed its cross-complaint, both dismissals being made expressly with prejudice. This action was brought to recover from the insurance company the sum of $2,574 alleged to be the cost of the settlement to plaintiffs, i.e. surrender of their claim of $1,324.80 plus reasonable attorney fees incurred in the Stark case in the sum of $1,250; they also seek recovery of an attorney fee of $750 in the instant action brought upon the policy. The heart of the trial judge's ruling is found in paragraph VII of the

findings, reading as follows: "None of the allegations of said cross-complaint pleaded or alleged an 'accident,' or made claim for damages 'caused by accident' as those terms were used, and intended to be used, by the parties to the insurance policy. None of the allegations of said cross-complaint pleaded or alleged a 'liability imposed upon the assured by law,' as such term was used, and intended to be used, by the parties to the insurance policy. None of the allegations of said cross-complaint pleaded or alleged the 'injury to or destruction of property' caused by any 'accident' occurring after the insured 'relinquished possession' of 'products sold,' as those terms were used, and intended to be used, by the parties to the insurance policy." This sustains defendant's arguments (1) that the cross-complaint alleges no accident, (2) that it alleges a liability created by contract and not one "imposed upon the assured by law" and (3) that the accident, if any, did not occur after the insured had relinquished possession of the oil and away from the premises of insured. Appellant assails each of these phases of the ruling as legally unsound. Defendant introduced no evidence and the ruling is based upon the terms of the policy and the cross-complaint, supplemented by certain undisputed oral evidence, thus presenting questions of law upon this appeal.

The first question is whether the cross-complaint in the Stark case avers an accident. ▉ Respondent contends, and we agree, that the insurer's obligation to defend is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. It is so held in *Lamb* v. *Belt Cas. Co.*, 3 Cal.App.2d 624, 630 [40 P.2d 311] and *Greer-Robbins Co.* v. *Pacific Surety Co.*, 37 Cal.App. 540, 543-544 [174 P. 110]. ▉ It is also established that in cases where no judgment has been rendered against the insured, the claim having been compromised, the question of the insurer's liability to defend remains open for adjudication in a later proceeding. (*Lamb* v. *Belt Cas. Co., supra,* 3 Cal.App.2d 624, 631; *Chrysler Motors* v. *Royal Indem. Co.*, 76 Cal.App. 2d 785, 788 [174 P.2d 318]; see also 45 C.J.S. § 937, p. 1073.) ▉ But the settlement, or stipulated judgment entered thereon becomes presumptive evidence of the liability of the insured and the amount thereof. (Belt, at page 631; Chrysler Motors at page 788.)

The cross-complaint in question alleges five causes of action, two of which sound in express warranty and three in implied warranty of fitness of the oil for the use for which intended.

Counsel for respondent say this is an action in contract and hence is not one to recover for an accident or upon a liability imposed by law.

Examination of the pleading reveals that it does factually allege an accident though it does not use that word. The draftsman of a complaint against the insured is not interested in the question of coverage which later arises between insurer and insured. He chooses such theory as best serves his purpose; if it be breach of contract rather than negligent performance of contract, he chooses the former; if it be negligence rather than warranty he alleges negligence; if he happens to choose warranty it may be an express one or one implied. And when the question later arises under an insurance policy as to what the facts alleged in the complaint do spell,—for instance, whether they aver an accident,—the complaint must be taken by its four corners and the facts arrayed in a complete pattern without regard to niceties of pleading or differentiation between different counts of a single complaint. And the ultimate question is whether the facts alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.

It is settled that "in case of doubt such doubt ought to be resolved in the insured's favor" (*Boyle* v. *National Cas. Co.* (D.C.), 84 A.2d 614, 616; see, to same effect, *Lee* v. *Aetna Cas. & Surety Co.* (2d Cir.), 178 F.2d 750, 752-753; *Pow-Well Plumbing & Heating, Inc.* v. *Merchants Mut. Cas. Co.*, 195 Misc. 251 [89 N.Y.S.2d 469, 474]; 8 Appleman on Insurance Law and Practice, § 4683, at p. 5 of 1955 Pocket Part). In the Pow-Well case, which depended upon a showing of an accident arising out of a plumber's operations, the court said with reference to a complaint leaving the matter in doubt: "In such a situation, it would seem to be the duty of the insurer to defend, if there is, potentially, a case under the negligence complaint, within the coverage of the policy. If, under the negligence complaint, a claim could be proved, which the insurer must pay, the duty to defend arises." (P. 474.)

The instant cross-complaint alleges purchase by Post Trading Company of the oil from the Nut Company for use in preparation of food products in the course of the buyer's business; that the seller knew the intended use; that previous purchases of such oil had been made from the Nut Company

by Post Trading and the oil was then satisfactory; that the particular batch of oil was used in preparation of food products; that it was not reasonably fit for the intended use; that it was so used without knowledge that it was rancid; that its condition was not discovered until after use or until after damage proximately caused thereby; that it did cause damage consisting of refunds to Post customers who had purchased unmerchantable food products from Post, cost of detergent and labor used in removing the effects of the rancid oil from machinery, cost of laboratory tests to determine cause of Post's bad products, damage to its trade name and good will, in the total sum of $12,140.80. In short it alleges use of rancid oil in the belief that it was sweet, with the unexpected result that the oil ruined all food products in which it was used, and damaged the machinery employed in the manufacture of same. This occurrence was an accident within the law applying to insurance policies worded like the one under discussion. "Caused by accident" is the phrase to be interpreted here; not "accidental means" or "external, violent, and accidental means."

■ *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, discusses the meaning of "accident" as follows, at page 175 [26 P. 762, 23 Am.St.Rep. 455] : "It is impossible to give a precise definition of the word 'accidental.' As every effect has a cause, there is one sense in which nothing is accidental. . . . But the authorities to be found on the subject seem to be to the point that 'accident' must be given its popular meaning; that is, a casualty—something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." Then, quoting Judge Withey in *Ripley* v. *Railway Co.*, 2 Bigelow's Life & Acc. Ins. Cas. 738: " 'Perhaps, in a strict sense, any event which is brought about by design of any person is not an accident, because that which has accomplished the intention and design, and is expected, is a foreseen and foreknown result, and therefore not strictly accident. Yet I am persuaded this contract should not be interpreted so as thus to limit its meaning; for the event took place unexpectedly, and without design on Ripley's part. It was to him a casualty, and in the more popular and common acceptation, "accident," if not in its precise meaning, includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.* . . . I think, in construing a policy of insurance against accident, issued to all sorts of

people, a majority of whom do not, as the company well knew, nicely weigh the meaning of words and terms used in it, courts are called upon to interpret the contract as a large class not versed in lexicology are sure to regard its terms and scope. That which occurs to them unexpectedly is by them called accident. The company fix the terms of the contract, and are to be held, in the absence of plain unequivocal exceptions and provisions, to intend what, in popular acceptation, the insured party is likely to understand by its terms.' . . . the language of. Judge Withey seems to us to express correct views of the question." (Pp. 175, 176.) The definition of accident given in the foregoing quotation has been accepted and applied uniformly in this jurisdiction and quite generally in others where the word accident is found without qualifying phrases such as "accidental means." This is true of *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800, 802 [147 P. 1175]; *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669, 671 [189 P. 835, 14 A.L.R. 784]; *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406, 411-412 [209 P. 26, 26 A.L.R. 116]. See also 14 Cal.Jur. § 101, p. 552; 7 Cal.Jur. 10-Yr.Supp., § 101, p. 138; 45 C.J.S. § 827, p. 880; 29 Am. Jur. § 931, p. 706. We quote *Zuckerman* v. *Underwriters at Lloyd's, London*, 42 Cal.2d 460, 473 [267 P.2d 777]; " 'Accident' has been defined as 'a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without any design of the person injured.' (*Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 175 [26 P. 762, 23 Am.St.Rep. 455].)' "

There is a clear distinction between injury caused by "accident" and one caused by "accidental means." This is pointed out in most of the cases just cited and in *Horton* v. *Travelers Ins. Co.*, 45 Cal.App. 462, 466 [187 P. 1070]; *Losleben* v. *California State L. Ins. Co.*, 133 Cal.App. 550, 555 [24 P.2d 825]; *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal.App. 308, 313 [299 P. 831]; *Zuckerman* v. *Underwriters at Lloyd's, London, supra,* 42 Cal.2d 460, 476; *Rooney* v. *Mutual Benefit Health & Acc. Assn.*, 74 Cal.App.2d 885, 888 [170 P.2d 72]. It is stated in the last cited case: "Where, as here, the policy does not insure against accidental death or accidental injuries, but against death or injuries caused by accidental means, it is not sufficient that the death or injury should be unexpected, but in the means through which the injury was sustained or

the death produced there must be something of an unexpected or unforeseen character." (See also annos. in 111 A.L.R. 628 and 166 A.L.R. 469.) As we deal only with an "accident" policy, the unexpected and unforeseeable result of a voluntary act fulfills the term of the policy as to the event covered thereby.

As above indicated the Post cross-complaint sounds in warranty, express as to two counts and implied in the other three counts. Respondent argues that this cannot be a "liability imposed upon the assured by law" because it is a liability arising from contract. ■ *Girard* v. *Commercial Standard Ins. Co.*, 66 Cal.App.2d 483, 490 [152 P.2d 509] says that "the term 'liability imposed by law,' when used in connection with liability insurance, is ordinarily construed as meaning liability imposed in a definite sum by a final judgment against the assured." The word "ordinarily" is significant; it does not preclude a different connotation when the policy under consideration so indicates. And that is the case here. ■ Coverage A of the insurance agreement obligates defendant "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or by written contract for damages, including damages for care and loss of services, because of bodily injury, disease or illness, including death at any time resulting therefrom, sustained by any person or persons." Coverage B: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, . . ." The use of the phrase "or by written contract" in A and its omission from B is persuasive that the phrase "imposed upon him by law" as used in this policy and in the subject rider relates to the nature of the liability to be defended rather than the result of the lawsuit against the assured. Like meaning was attributed to the phrase "liability imposed by law" in *Bahlman* v. *Hudson Motor Car Co.*, 290 Mich. 683 [288 N.W. 309, 313]; *Ohio Cas. Ins. Co.* v. *Welfare Fin. Co.* (8 Cir.), 75 F.2d 58, 59; *Dryden* v. *Ocean Acc. & Guar. Corp., Ltd.* (7 Cir.), 138 F.2d 291, 292-293. And that is undoubtedly the correct connotation of the phrase in the policy at bar.

■ If the complaint filed against the insured alleges several causes of action some of which are not covered by the policy but one or more being within its terms, the insurer is

bound to defend the action. (8 Appleman Insurance Law and Practice, § 4683, p. 10; *Pow-Well Plumbing & Heating, Inc.* v. *Merchants Mut. Cas. Co.*, 193 Misc. 251 [89 N.Y.S.2d 469, 475]; *Christian* v. *Royal Ins. Co.*, 185 Minn. 180 [240 N.W. 365, 366]; *American Indem. Co.* v. *Sears, Roebuck & Co.* (6 Cir.), 195 F.2d 353, 356.)

 It may be conceded that an action upon express warranty rests upon contract, but privity of contract is not necessary to an implied warranty when foodstuffs are involved, as here. (*Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 689 [163 P.2d 470]; *Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799].) Appellant cites *Rubino* v. *Utah Canning Co.*, 123 Cal.App.2d 18, 24-26 [266 P.2d 163], which involved the question of the applicable statute of limitations in an action on implied warranty. It held the one-year statute (Code Civ. Proc., § 340, subd. 3.), relating to injury "caused by the wrongful act or neglect of another" to be applicable rather than the contract section (Code Civ. Proc., § 339, subd. 1). The opinion relies in part upon *Gosling* v. *Nichols*, 59 Cal.App.2d 442 [139 P.2d 86], which passed upon the question of abatement through defendant's death. Dismissal on that ground was there affirmed. The complaint alleged negligence and breach of implied warranty that food sold to plaintiff was wholesome. At page 444 the court said: "The gravamen of a cause of action for breach of an implied warranty that food is fit for human consumption is the personal injury which results, and the action 'sounds in tort.' The cause of action is not ex contractu. (*Singley* v. *Bigelow*, 108 Cal.App. 436, 445 [291 P. 899]; *Speer* v. *Brown*, 26 Cal.App.2d 283, 294 [79 P.2d 179]; *Harkins* v. *Provenzo*, 116 Misc. 61 [189 N.Y.S. 258, 259 et seq.]: *Bernstein* v. *Queens County Jockey Club*, 222 App.Div. 191 et seq. [225 N.Y.S. 449].)" See also *Automobile Ins. Co.* v. *Union Oil Co.*, 85 Cal.App.2d 302, 306 [193 P.2d 48]; *De Mirjian* v. *Ideal Heating Corp.*, 91 Cal.App.2d 905, 909 [206 P.2d 20]; *Zellmer* v. *Acme Brewing Co.* (9 Cir.), 184 F.2d 940, 945; *Harkins* v. *Provenzo*, 116 Misc. 61 [189 N.Y.S. 258, 260-261]; *Bekkevold* v. *Potts*, 173 Minn. 87 [216 N.W. 790, 791, 59 A.L.R. 1164]; 55 C.J. § 701, p. 715; 77 C.J.S. § 314, p. 1155. We quote 46 American Jurisprudence, § 332, pages 513, 514: "An implied warranty arises under certain circumstances by operation of law irrespective of any intention of the seller to create it. It is a conclusion or inference of law. Similarly, implied warranties provided for

by the Uniform Sales Act are imposed by operation of law and, unless specifically negatived or waived, become a part of the contract of sale by virtue of the statute. It has been said that an implied warranty arises from the presumed intention of the parties. Its origin and use are to promote high standards in business and to discourage sharp dealings." *Hertzler* v. *Manshum*, 228 Mich. 416 [200 N.W. 155, 157]: "The implied warranty, so called, reaching from the manufacturer of foodstuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised, and a breach of such duty inflicting personal injury is a wrong in the nature of a tort, and not a mere breach of contract to be counted on in assumpsit. Except in name and to establish privity between the manufacturer and the ultimate consumer, it is the same thing as negligence. Plaintiff's case, in its last analysis, is bottomed on negligence." It is apparent that an implied warranty creates a liability imposed by law and the insurer was obligated to defend such an action.

The cited case of *Canadian Indem. Co.* v. *Andrews & George Co. Ltd.* (1953), 1 S.C.R. 19 (Canada Supreme Court Law Reports 1953) lends considerable support to respondent's argument that breach of an implied warranty gives rise to a liability imposed by contract rather than one imposed by law. But its reasoning is opposed to the above cited cases of *Gosling* v. *Nichols, Rubino* v. *Utah Canning Co.* and other authorities stating the law as it has developed in the United States. And it is opposed to the doctrine of *Eads* v. *Marks*, 39 Cal.2d 807 [249 P.2d 257], which involved the question of whether and when a right of action for tort grows out of a breach of contract. The holding is expressed in this quotation from page 811: "Here, the duty of care arose by reason of the contract, and plaintiff has sued in tort for the breach of that duty. The contract is of significance only in creating the legal duty, and the negligence of the defendant should not be considered as a breach of contract, but as a tort governed by tort rules. (*Rushing* v. *Pickwick Stages System*, 113 Cal.App. 240 [298 P. 150]; *Basler* v. *Sacramento etc. Ry. Co.*, 166 Cal. 33 [134 P. 993].) As was said in *Peterson* v. *Sherman*, 68 Cal.App.2d 706, 711 [157 P.2d 863]: 'It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu but if it arises *from a breach of duty growing out of the contract* it is ex

delicto. . . .' (See also *Jones* v. *Kelly, supra,* 208 Cal. 251, 254-255 [280 P. 942].) Where the cause of action arises from the breach of a contractual duty, the action is delictual notwithstanding that it also involves a breach of contract. (*Jones* v. *Kelly, supra; Peterson* v. *Sherman, supra.*)'' We are persuaded that the Canadian Indemnity Company case does not represent the law of this state.

There is more than legalism in the application of the foregoing cases to the facts at bar. ▮ An insurance policy is to be construed most favorably to the insured, in such manner as to provide full coverage of the indicated risk rather than to narrow the protection. (*Olson* v. *Standard Marine Ins. Co.,* 109 Cal.App.2d 130, 135 [240 P.2d 379]; *Miller* v. *United Ins. Co.,* 113 Cal.App.2d 493, 497 [248 P.2d 113]; *Pendell* v. *Westland Life Ins. Co.,* 95 Cal.App.2d 766, 769 [214 P.2d 392]; *Fageol Truck & Coach Co.* v. *Pacific Indem. Co.,* 18 Cal.2d 748, 751 [117 P.2d 669].) ▮ The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. (*Miller* v. *United Ins. Co., supra,* at p. 497; *Narver* v. *California State Life Ins. Co.,* 211 Cal. 176, 180 [294 P. 393, 71 A.L.R. 1374].) When American Nut Company bought a property damage endorsement to protect against accidents growing out of the handling or use of its products or any condition in products manufactured, sold, handled or distributed by it, a reasonable expectation would be protection against the type of liability which would ordinarily grow out of its kind of business. The body of the policy describes it as "Nut Processing Co." The particular endorsement: "Food Sundries Mfg. N.O.C—Code 2455-cleaning, grinding, sorting or mixing of coffee, sugars, confections, pastry flours, spices or nuts—no cereal milling." Another one describes it as "Food Products—N.O.C. in paper or cardboard containers or in bulk." ▮ The insurer is presumed to have known of the nature of applicant's business and that it was one in which accidents might occur, not through explosion or violence of any kind but through an unwholesome condition in a food product such as peanut oil. Naturally sales are not conducted wholly through written contracts. ▮ And every sale of foodstuffs carries an implied warranty of fitness for consumption. ▮ Normally a businessman who takes "comprehensive" insurance with express coverage of "products property damage" would expect his

ordinary transactions to be covered. If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. (*Pendell* v. *Westland Life Ins. Co., supra,* at p. 770.) If this is not done any ambiguity or uncertainty is resolved in favor of the policyholder. Indeed an exception must be couched in terms which are clear to the ordinary mind (*Pendell* v. *Westland Life Ins. Co., supra,* at p. 770) or any doubts as to meaning will be resolved against the insurer.

That the accident arose out of "the existence of any condition *in goods or products manufactured, sold, handled or distributed by the insured*" is equally clear. And, as the accident occurred at the time of use of the rancid oil in the belief that it was good, it cannot be gainsaid that it occurred "*after the insured has relinquished possession thereof* (the rancid oil) *to others and away from the premises owned, rented or controlled by the insured.*"

All of the conditions of the Products Property Damage Endorsement were fulfilled and defendant improperly refused to defend.

This gave plaintiffs the right to make any reasonable and bona fide compromise of the action against them. (*Lamb* v. *Belt Cas. Co.,* 3 Cal.App.2d 624, 630 [40 P.2d 311]; *St. Louis Dressed Beef & Provision Co.* v. *Maryland Cas. Co.,* 201 U.S. 173 [26 S.Ct. 400, 50 L.Ed. 712]; 45 C.J.S. § 937b, p. 1072; 142 A.L.R. 812, anno.) This they did. Their complaint for recovery of the purchase price was dismissed with prejudice and the Post Trading cross-complaint was dismissed, also with prejudice. Plaintiffs had incurred in that action an attorney fee of $1,250, and no claim is made that the amount is not reasonable. That item is recoverable here. (*O'Morrow* v. *Borad,* 27 Cal.2d 794, 801 [167 P.2d 483, 163 A.L.R. 894]; 45 C.J.S. § 926, p. 1043.) No money passed in the compromise but plaintiffs gave up their claim to the purchase price of the oil, $1,324.80. They argue that that amount is part of their recovery herein as it measures the value of what they gave in order to obtain dismissal of a claim against them in the sum of $12,140.80. That was an agreed purchase price, there is no claim to the contrary, or that it was not the reasonable value of the oil if sweet and wholesome. Had plaintiffs been required to pay $1,324.80 in cash to effect a settlement there would be little question of their right to recover it in this action. The insurance com-

pany answer at bar says that plaintiffs had a good defense to the cross-complaint. Appellants at the trial of this case introduced evidence that there was nothing wrong with the oil. If that is so, they gave up a good claim for $1,324.80 as consideration for a compromise. But if the oil was rancid when sold that was the cause of the accident, not the result of it. and hence the value of that oil would not equal the sale price. The court made no finding on the subject and the question of the value of that claim is open for determination as one of fact under the Lamb and Chrysler cases, *supra*, and cannot be determined as one of law upon this appeal.

 Appellant complains of dismissal of the second count of his complaint wherein he seeks recovery of a $750 attorney fee for prosecution of the instant action. There was no error in this. It is so ruled in *O'Morrow* v. *Borad, supra,* 27 Cal.2d 794, 801. To the same effect are *Macco Const. Co.* v. *Fickert,* 76 Cal.App.2d 295, 305 [172 P.2d 951]; *Anger* v. *Borden,* 38 Cal.2d 136, 145 [238 P.2d 976]; *Viner* v. *Untrecht,* 26 Cal.2d 261, 272 [158 P.2d 3], and many other cases.

Appellants also complain of other alleged errors, such as refusal to receive evidence of expenses not alleged in their complaint and refusal to permit amendment to cover same. But this matter of permitting amendment during the trial is a discretionary one. And we do not apprehend that appellants will not have full opportunity upon retrial to fully prove their damages or be refused leave to amend to that end. No other points require discussion.

The judgment is reversed.

Wood (Parker), Acting P. J., and Vallée, J., concurred.