THE COURT.
The defendant insured the plaintiff against liability to third parties for property damage, except automobile, caused by accident, and agreed to defend any suit against the insured alleging such injury and seeking damages on account thereof, “even if such suit is groundless, false or fraudulent.” The insured was a producer of oil in the Wilmington field. In August 1958 the United States of America sued all the oil and gas producers in that field claiming that their operations had withdrawn underground support from its naval base on Terminal Island and other properties thereby causing subsidence which seriously damaged the government property. It is to be noted that the government’s complaint alleged production of oil began in 1932, that subsidence of government property began in 1943 and continued at an increasing rate up to the time the damage action was filed. It is also important that the insurance policy *Supp. 833 in question was issued June 2, 1958. Cametal demanded that its insurer defend it in the damage action. The insurer refused. Cametal spent over $3,000 defending that action which in 1959 was dismissed as to Cametal. In the ease at bar Cametal sues its insurer to recover $3,000 of the money so expended. The trial court gave judgment for the defendant. Cametal appeals.
1. Our first problem is to decide what is meant by the word “accident” in a liability policy. In the so-called door case, Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co. (1959), 51 Cal.2d 558, the court states at p. 563 [334 P.2d 881] : “No all-inclusive definition of the word 1 accident’ can be given. It has been defined ‘as “a casualty •—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured.” [Citations.] ’ It ‘ “includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event.” ’ (Richards v. Travelers Ins. Co., 89 Cal. 170, 176 [26 P. 762, 23 Am.St.Rep. 455]. . . .” (Emphasis by the court.) The court said at page 564: “The door failures were unexpected, undesigned, and unforeseen. They were not the result of normal deterioration, but occurred long before any properly constructed door might be expected to wear out or collapse. Moreover, they occurred suddenly. It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm (Cf., Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 342 Ill.App. 456 [97 N.E.2d 132, 139-140]), but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred.” In the rancid oil case, Ritchie v. Anchor Casualty Co. (1955), 135 Cal.App.2d 245 [286 P.2d 1000], the court mentions “suddenly” as part of an approved definition of accident (p. 253) but the point is not further discussed. However, in the door case (supra) Mr. Justice Spence in his dissenting opinion refers to the rancid oil case (p. 568) and says: “. . . the use of the rancid peanut oil there ‘suddenly and unexpectedly’ caused damage to both the entire mass of the food product into which it was mixed and to the machinery used in the processing.” The lint case, Moore v. Fidelity & Cas. Co. (1956), 140 Cal.App.2d Supp. 967, holds at page 971 [295 P.2d 154] :“... if it [the damage] happened unex *Supp. 834 pectedly to the person damaged, it is to him a casualty.” In that case lint from the insured's laundromat had clogged drains but the damage was done suddenly when the rain came.
2. The next point is that if the event is not an accident from the point of view of the person injured it is not covered by the policy. All the cases cited above are to that effect. The rancid oil case (supra) Ritchie v. Anchor Casualty Ins. Co. (1955), 135 Cal.App.2d 245, at page 252 [286 P.2d 1000] cites Richards v. Travelers Ins. Co. (supra) (1891), 89 Cal. 170, with approval and states, “Then, quoting Judge Withey in Ripley v. Railway Co., 2 Bigelow’s Life & Acc. Ins. Cas. 738: ‘ “Perhaps, in a strict sense, any event which is brought about by design of any person is not an accident, because that which has accomplished the intention and design, and is expected, is a foreseen and foreknown result, and therefore not strictly accident. Yet I am persuaded this contract should not be interpreted so as thus to limit its meaning; for the event took place unexpectedly, and without design on Ripley’s part. It was to him a casualty, and in the more popular and common acceptation, ‘accident,’ if not in its precise meaning, includes any event which takes place withotit the foresight or expectation of the person acted upon or affected by the event.” ’ ” (Emphasis by the court.) One word of caution is needed here. We are not saying that every “accident” to a third party is covered by a liability policy. For example if the insured intentionally shoots and injures a third party, it is an accident as to the third party but it may not be covered by a liability policy. We are not confronted by such a situation here and need not discuss it further.
3. The third point is that whether the event is an accident, insofar as the insurer’s duty to defend the damage action is concerned, must be determined by the allegations of the complaint in that action.
This problem is discussed in the rancid oil case (supra) Ritchie v. Anchor Casualty Co. (1955), 135 Cal.App.2d 245 [286 P.2d 1000], At pages 250-251 the court says, “The first question is whether the cross-complaint in the Stark case avers an accident. Respondent contends, and we agree, that the insurer’s obligation to defend is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. It is so held in Lamb v. Belt Cas. Co., *Supp. 835 3 Cal.App.2d 624, 630 [40 P.2d 311] and Greer-Robbins Co. v. Pacific Surety Co., 37 Cal.App. 540, 543-544 [174 P. 110]. It is also established that in eases where no judgment has been rendered against the insured, the claim having been compromised, the question of the insurer’s liability to defend remains open for adjudication in a later proceeding. . . . The cross-complaint in question alleges five causes of action, two of which sound in express warranty and three in implied warranty of fitness of the oil for the use for which intended. Counsel for respondent say this is an action in contract and hence is not one to recover for an accident or upon a liability imposed by law. Examination of the pleading. reveals that it does factually allege an accident though it does not use that word. The draftsman of a complaint against the insured is not interested in the question of coverage which later arises between insurer and insured. . . . And when the question later arises under an insurance policy as to what the facts alleged in the complaint do spell,—for instance, whether they aver an accident,—the complaint must be taken by its four corners and the facts arrayed in a complete pattern without regard to niceties of pleading or differentiation between different counts of a single complaint. And the ultimate question is whether the facts alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy. ’ ’
4. The fourth point is that the government’s complaint not only fails to allege facts which show that the event was an accident but alleges facts which negative the possibility that it was one. It alleges that oil has been produced from the Wilmington field since 1932, that the subsidence of the government property on Terminal Island between 1943 and March 20, 1957, had been so great that remedial measures against it had cost the government some $6,000,000, that additional remedial measures were necessary and that subsidence would continue if withdrawing oil from the government property was continued or remedial measures were not taken. In other words, the complaint alleged that it was certain that additional damage would occur to government property if withdrawal of oil continued, knowing that it will result in damage. That which is certain to happen is not an accident. Cases cited by both parties which attempt to define accident may quibble over whether it must be sudden and unexpected *Supp. 836 but no case holds that what is certain to occur is an accident. On the contrary Ins. Code, section 22, states, “Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.” (Emphasis added.) Webster defines “contingent” as: 1. “Liable, but not certain, to occur; possible. 2. Happening from unforeseen causes, or subject to unforeseen conditions; accidental or incidental; chance.” (Emphasis added.)
In the early years of the subsidence, it might have been an accident or a series of accidents but by 1958 (the only time covered by the policy of insurance issued by our defendant) the problem was not one of accident looked at from the point of view of the government, or otherwise. The defendant was not bound to defend Cametal in the government action.
The judgment is affirmed.
A petition for rehearing was denied February 23, 1961.