[Civ. No. 22444. First Dist., Div. Two. Sept. 29, 1966.]

WILLIAM BLACKFIELD et al., Plaintiffs and Respondents, v. UNDERWRITERS AT LLOYD'S, LONDON et al., Defendants and Appellants.

Wallace, Garrison, Pascoe, Norton & Ray and William R. Ray for Defendants and Appellants.

Adams, Friedenrich & Ware and David Freidenrich for Plaintiffs and Respondents.

AGEE, J.—Defendants-insurers appeal from a judgment declaring that the insurance policy issued by them to plaintiffs-respondents obligated appellants to defend an action for damages brought against respondents by the McLaughlins, husband and wife.

For reasons stated hereafter we do not determine at this time what obligation, if any, appellants may ultimately have to indemnify respondents in the event that the McLaughlins are successful in their action.

The present evidentiary record consists only of the McLaughlins' second amended complaint, the appellants' denial of coverage and refusal to defend the McLaughlin action, and the insurance policy.

The parties agree that appellants' obligation to defend must be measured by comparing the allegations of the McLaughlins' pleading with the terms of the insurance policy. (*Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 616 [29 Cal.Rptr. 586]; *Ritchie* v. *Anchor Cas. Co.,* 135 Cal.App.2d 245, 250 [286 P.2d 1000].)

The McLaughlins' complaint indicates that respondents are the builders and sellers of a tract of homes located in Corte Madera and commonly known as ''Marin Estates''; that the McLaughlins purchased one of these homes from respondents in November, 1958; that in May, 1961, the McLaughlins discovered that respondents had so defectively constructed the foundation of their home and compacted the fill on which it was placed that the foundation had settled unevenly, causing the house to slant, the stucco portion of the house to crack, and the windows and sliding doors not to open or close properly.

Seven theories of recovery are separately alleged: implied warranty that the home would be reasonably fit for residence; implied warranty that the foundation would be fit for its normal purpose; express oral warranty that the foundation

and the fill in which it was imbedded would not settle; oral fraudulent representation that there would be no problems in connection with the home, its foundation and the soil on which it was built; same as last representation except that the charge of fraud is replaced by an allegation that respondents had no reasonable grounds for believing the representation to be true; intentional suppression of the fact that the home was constructed on fill; and negligent construction of home and compaction of fill.

Each of the seven counts concludes with the allegation that "as a direct and proximate result thereof, plaintiffs' said home has been damaged in the sum of Eleven Thousand Five Hundred Dollars ($11,500.00)."

We turn now to the provisions of the policy. It insured respondents against "all liability imposed by law against the Assured for loss of or damage to or destruction of property of others . . . sustained or alleged to have been sustained . . . and arising from any cause whatsoever out of the operations, activities, work and/or business of the Assured . . . in connection with the Assured's business consisting principally of HOME BUILDER."

In addition, appellants agreed "to defend . . . all claims or suits for such injury or damage [covered under the policy] for which the Assured is, or is *alleged* to be liable." (Italics added.)

The policy *excluded* liability for the following: "For Claims made against the Assured: 1. For repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement or 2. For the loss of use of any such defective product or products or part or parts thereof or 3. For damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed."

The foregoing policy provisions are identical with those involved in *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London,* 238 Cal.App.2d 532 [47 Cal.Rptr. 843], decided December 3, 1965. (Hearing unanimously denied by Supreme Court on January 26, 1966.)

The issue determined therein and the factual situation upon which it is based are the same as those before us. Coinci-

dentally, even the insurers and the respective counsel in each action are the same.

In the *Eichler* case a number of owners of homes built and sold by Eichler filed actions against Eichler for damages resulting from the rupture and leakage of the radiant heating systems installed in the concrete floors of said homes. Coverage was denied and defense refused by Eichler's insurers.

The court analyzed the allegations of the complaints in the nine actions involved therein and compared them with the policy provisions which we have quoted above, stating: "We are not concerned with any obligation appellant [insurer] may ultimately have to indemnify respondent in the event that some or all of the claimants here involved are successful in their actions. The question here is whether on our record appellant is under a duty to defend respondent against the third party claims recited above."

Justice Salsman then lays down the applicable rules. "The duty to defend is, of course, broader than the duty to indemnify. [Citation.] ▮▮▮ Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer. [Citations.] ▮▮▮ The insurer's obligation to defend must be measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. [Citations.] If the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, then the duty to defend is present. [Citations.]" (238 Cal.App.2d, at 538.)

In concluding that the duty to defend existed as to *each* of the nine actions, Justice Salsman pointed out that each of the complaints therein "contains *some allegation of damages unrelated to the cost of repair and replacement of the defective heating system.* Thus, some claim structural damage to their houses, while others allege a decrease in the value of their homes, or claim damage to furniture, fixtures and appliances. All of these claims appear to come within the coverage extended by the insurance and hence the duty to defend is present. [Citations.]" (238 Cal.App.2d, at 539; italics added.)

The opinion analyzes the Bach complaint as follows: "This complaint alleged damages as a result of breach of express and implied warranties relating to the radiant heating system. In paragraph IV of the first cause of action plaintiff alleged: 'The heating system developed numerous leaks, and large por-

tions of the *floor had to be torn up in order to repair the same.' '' (Italicized in the opinion.)

Thus, the *Eichler* decision holds that the insurer, under policy provisions identical with those in this case, must defend an action based upon a claim for damages to a nondefective part (such as a floor) resulting from a defective part (heating system). This is because, as stated in *Eichler,* such ''allegation of damages [is] unrelated to the cost of repair and replacement of the defective heating system.''

In the instant case the McLaughlins' first count seeks damages of $11,500 for breach of an implied warranty that ''said home would be reasonably fit and proper for use as a residence.'' They allege that it was not fit for such use ''in that it was defectively constructed and built.'' The following defects are specified:

''1. The foundation of the home and the soil in which same is imbedded, which was imported, placed and compacted by defendants as fill, was defectively constructed, built, installed, placed and compacted;

''2. The foundation portion of the home has settled in varying depths from approximately five (5) to eight (8) inches. The house is slanted and unlevel;

''3. Exterior cracks have appeared in the stucco portion of the home;

''4. The windows and sliding doors in the home do not open or close properly or efficiently, or at all.''

We think it is reasonable to analyze the foregoing claim as being one for damages to those parts of the house that are not defective. We can see no difference in principle between damages to a house resulting from a defective heating system, as in *Eichler,* and damages to a home resulting from the defective parts complained of herein.

It is unnecessary to review the remaining counts, since if one of several causes of action alleged against the insured is covered by the policy the insurer is bound to defend the action. (*Ritchie* v. *Anchor Cas. Co.,* 135 Cal.App.2d 245, 254 [286 P.2d 1000]; *Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal.App.2d 524, 529 [343 P.2d 311].)

It is clear, of course, that the policy excludes appellants' liability for the replacing or repairing of such defective parts. (Exclusion 1.) Respondents' brief concedes this. Their position is that the policy does not exclude liability for dam-

ages *unrelated* to the cost of such repair or replacement. *Eichler* supports this position.

Appellants attempt to extend Exclusion 3[1] to damage to the whole house, including the nondefective parts thereof, on the theory that it is property upon which the respondents had worked. This is an unreasonable interpretation of the provision. It only excludes damage to "that particular part" or parts upon which the Assured has performed faulty work. If this were not so then appellants would not have been ordered to defend any of the actions involved in the *Eichler* case.

 Moreover, if there is any ambiguity or uncertainty in this exclusionary provision, it should be resolved against the insurer.

 While we have no hesitancy in affirming the ruling of the trial court as to appellants' obligation to defend the McLaughlin action, we do not think that the record before it and now before us is sufficient to justify a determination of the obligation to indemnify.

The first two paragraphs of the judgment appealed from provide that appellants are obligated to provide a defense to the McLaughlin action and to reimburse respondents for expenses incurred by them in defense of said action. The reasonableness of the amount allowed by the court for such expenses is not in dispute and appellants concede that if the duty to defend is found, they must reimburse for such expenses.

The third paragraph provides as follows: "3. That at such time as the right and basis for recovery by [the McLaughlins] . . . are determined either by way of judgment or final settlement, this Court shall undertake a declaration of the obligation, *if any,* of the defendants [appellants] to indemnify plaintiffs [respondents] for the amount of said judgment or settlement as the case may be." (Italics ours.)

As noted above, this is the procedure followed in the *Eichler* case. However, the concluding paragraph of the judgment in this case provides as follows: "4. That in the event plaintiffs shall undertake the making of any repairs to the premises . . . by way of compromise, settlement or otherwise, defendants

---

[1]For convenience we repeat this exclusion: "3. For damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed."

shall reimburse plaintiffs for such amount as shall be reasonably expended in the making of said repairs.''

Thus, paragraph 4 permits respondents to make such repairs and charge appellants with the reasonable expense thereof in advance of and without any ''declaration [by the court] of the obligation, if any, of the defendants to indemnify plaintiffs,'' as provided in paragraph 3.

Such a result would be inconsistent with and contrary to the purpose and provisions of paragraph 3. Paragraph 4 should be deleted from the judgment.

Respondents themselves concede that the present judgment should not be interpreted as an adjudication of the obligation to indemnify. In their brief they state: ''Accordingly, it is not inconceivable that a carrier may be obligated to defend an action and yet at the same time be absolved from any responsibility to indemnify the insured against a judgment resulting therefrom. Thus, the absence of any evidence bearing upon a diminution in value of the home may ultimately excuse the carrier from a duty to indemnify. However, conjecture as to outcome or the evidence which may contribute thereto is no logical basis upon which the duty to defend can be determined. Clearly, the duty to defend exists irrespective of the uncertainty as to outcome at time of trial. . . . Only evidence produced at time of trial will convincingly confirm one way or the other the basis upon which the claim of $11,500.00 in damages is actually made.''

The judgment is modified by deleting paragraph ''4'' therefrom and, as so modified, it is affirmed. The parties are to bear their own respective costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.