213 So.2d 225

# EDGEHILL CORPORATION

v.

## Eleanor N. HUTCHENS et al.

### 8 Div. 286.

Supreme Court of Alabama.

June 27, 1968.

Eyster & Eyster, Decatur, for appellant.

**493**

Watts, Salmon, Roberts & Stephens, Huntsville, for appellees.

KOHN, Justice.

The appellant, plaintiff below, filed suit in the Madison County Circuit Court for recovery of back rent due under a commercial rental contract, which covered the period of time from October 1, 1959 to September 30, 1969. The lessees were M. M. Hutchens, deceased, and W. T. Hutchens. The amount sued for represents the rental deficiency for the months of July, August, September, October, November, December 1966 and January, 1967. The lease is set out in full below:

"STATE OF ALABAMA
MORGAN COUNTY

"THIS LEASE made and entered ‚into on this the 19th day of June, 1957, by and between Lelia Sykes Martin, a widow, as Lessor, and M. M. Hutchens and W. T. Hutchens of Huntsville, Alabama, as Lessees,

"WITNESSETH: ·

"1. The Lessor does hereby lease unto the Lessees the following described property situated in Decatur, Alabama, viz:

The ground floor and basement of the two adjoining buildings fronting on Second Avenue and known as 602 and 604 Second Avenue, which buildings are presently occupied by H & H Drugs, a Walgreen Agency, not including however, that portion of the corner building now occupied by the shops fronting on Johnston Street.

"Lessees agree that Lessor will be given access to the basement in which is located the furnace that heats the Johnston Street shops and the upstairs.

"2. The term of this lease shall be for a period of ten (10) years, beginning on October 1, 1959, and expiring on September 30, 1969.

"3. During the term of this lease, Lessees agree to pay as rent for said premises an amount equal to three per cent of the gross annual sales of the business conducted therein, provided, however, that Lessees guarantee to pay a monthly rental of Five Hundred Twenty Five ($525.00) Dollars per month, said guaranteed monthly rental to be paid on the last day of each calendar month.

"At the end of each calendar year, the Lessees shall determine the gross sales of said business and shall pay to Lessor the difference between the guaranteed monthly rental theretofore paid and the amount arrived at by computing three per cent of the gross sales, if such amount exceeds the guaranteed rental, such payment to be made within thirty days after the end of said year. For the portion of the calendar years in which said lease commences and ends, the gross sales shall be the sales for that portion of each of said years during which said lease is operative, and the Lessees will compute said gross sales and pay to Lessor the additional amount to which she is entitled, if not later than thirty days after the termination of each of said partial year's operation.

"In order to properly arrive at the rental agreed to be paid, Lessees agree to keep records properly reflecting the gross sales of said business, and further agree that said records will be available to Lessor or her agent or attorney for inspection and auditing in the event Lessor should desire to have the same checked or audited.

"4. Lessor agrees to keep the roofing of said building and the outside walls in a proper state of repair, but shall not be liable for any damage caused by a defect therein until she shall have had notice of such defect and a reasonable time thereafter within which to repair said roof. Any repairs or upkeep otherwise shall be done by Lessees.

"5. Should the Lessees fail to pay any rental due hereunder, or to perform any other obligation of this lease, and should default continue for a period of ten days after notice thereof addressed to Lessees at the leased premises, the Lessor shall have the right to terminate this lease, and the same may be terminated by the Lessor's giving the Lessees ten days notice of her election to terminate the same.

"6. Should the leased premises be destroyed or so badly damaged by fire or other casualty during the term of this lease as to be untenantable, the lease shall cease and determine, unless Lessor, upon notice thereof elects within sixty days thereafter to restore said premises to a similar or better condition, in which event Lessor shall have the right to retain the lease, provided such replacement or repairs shall be made within a reasonable time thereafter; provided, however, that during such period all rental shall abate. In the event said premises are partially damaged so as not [to] be rendered untenantable, the Lessor shall repair the same within a reasonable time after notification, and the rent shall be proportionately and equitably abated during the period of restoration.

"7. The Lessees shall have two five-year options to extend this lease under the same terms and conditions as this lease. If the Lessees elect to renew the lease under said options, said Lessees must give the notice not less than ninety days prior to the end of the term of this lease, or not less than ninety days prior to the end of the first five-year renewal.

"8. It is agreed that this lease is binding upon the heirs, assigns, and personal representatives of the parties hereto.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals in duplicate, on the date first above written.

> "Lelia Sykes Martin
>   Lessee (sic) [Lessor]
> M M Hutchens
> W. T. Hutchens
>   Lessees"

The suit was brought against Eleanor N. Hutchens and Susie N. Hutchens, execu-

trices of the estate of M. M. Hutchens, deceased, he being an original party to the lease sued upon. After demurrers addressed to the complaint were overruled, the appellees, defendants below, filed their answer wherein they plead (1) the general issue; and, (2), the statute of non-claim alleging therein that on December 22, 1965, defendants were appointed executrices of the will of M. M. Hutchens, deceased, and that no verified claim was filed within six months of the granting of letters testamentary by said plaintiff.

The appellant filed a demurrer to the answer of the appellees, which demurrer was overruled by the trial court by judgment. The appellant moved to take a nonsuit on account of the adverse ruling of the trial court, with leave to appeal to the Supreme Court of Alabama to review the judgment of the trial court overruling the demurrer. The nonsuit, with leave to appeal, was granted by the trial court and this appeal was perfected by the appellant.

The only question raised by this appeal is whether future rentals under a lease fall within the "contingent claims" exception to the Alabama statute of non-claim. Title 61, § 211, Code of Alabama, 1940 [Recompiled Code 1958], reads as follows:

"All claims against the estate of a decedent, other than the claims referred to in the preceding section, whether due or to become due, must be presented within six months after the grant of letters testamentary or of administration; and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited. * * *"

In the earlier statutes, it clearly appears that two different periods of time were provided, one for accrued claims and another for non-accrued claims.

"§ 2239 (1883) *All claims barred unless presented in eighteen months after accruing, or from grant of letters.*—All claims against the estate of a deceased person, must be presented within eighteen months after the same have accrued, or within eighteen months after the grant of letters testamentary, or of administration; and if not presented within that time, are forever barred." Revised Code of Alabama, 1867, Part 2, Title 4, p. 466.

"§ 5815. *All other claims to be presented, or they are barred.*—All claims against the estate of a decedent, other than the claims referred to in the preceding section, must be presented within twelve months after the same have accrued, or within twelve months after the grant of letters testamentary or of administration; and if not presented within that time, they are forever barred, and the payment or allowance thereof is prohibited." Code of Alabama, 1923, Vol. 3, p. 63.

A review of the decisions of this court rendered subsequent to the original statute, and subsequent to the present statute as it is now worded, discloses that this court did not go off on the particular wording of the two aspects of the earlier statute, but based its holdings on the fact that the legislature, as a matter of public policy, did not intend to include "contingent claims" as being barred by a six months period from the time of the appointment of an administrator or executor. Fretwell v. McLemore, 52 Ala. 124; McDowell, Adm'r v. Jones, 58 Ala. 25; Dallas Compress Co. v. Liepold, 205 Ala. 562, 88 So. 681; Murwin v. Birmingham Trust & Savings Co., 237 Ala. 100, 185 So. 756; Moore v. Stephens, 264 Ala. 86, 84 So.2d 752. This result could leave personal representatives with a problem, however the remedy is legislative, and not judicial.

The proper aim of judicial interpretation is to determine the intention of the legislature. We believe it is pertinent to point out that there exists, and has long existed, in this state, a principle that when the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate

**496**

the statute, and it is presumed that the legislature deliberately adopted the statute with the knowledge of this court's interpretation thereof. Hamm v. Harrigan, 278 Ala. 372, 178 So.2d 529; Sloss Sheffield Steel & Iron Co. v. Nations, 243 Ala. 107, 8 So.2d 833; Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473.

In view of the foregoing, we are now faced with the specific question of whether, under the particular facts of this case, it comes within the "contingent exception."

We find that an explanation of "contingent," and the reason for the "contingent exception" set out in the case of McDowell, Adm'r v. Jones, supra, wherein the claims that are contingent are well-explained by Chief Justice Brickell. This definition was approved by this court in Dallas Compress Co. v. Liepold, supra. In Moore v. Stephens, supra, this court recognizes an exception to the requirement of the statute of non-claim, and that exception is where the claim is a "contingent" one. This decision rightly refers to the case of Fretwell v. McLemore, supra, as to what constitutes a "contingent claim." Moore v. Stephens, supra, cites other cases which recognize the existence of the exception.

We hold that the particular facts of this case come within the definition of the exception, that is, "contingent claims."

The appellee cites the case of North Birmingham American Bank v. White, 225 Ala. 72, 142 So. 47, as being controlling on this issue. In North Birmingham American Bank v. White, supra, a claim against the estate of a co-maker of a note was not timely filed, and it was held to be barred by the statute of non-claim. The position of a co-maker of a note is quite different from that of a lessee obligated to pay under an installment rental contract such as is involved in this case. The co-maker of the note is jointly and severally liable and is primarily obligated to pay the debt. The lessee, under a rental contract such as this, may never be liable to pay as the claim may never become due because of some contingency. The situation in the case of Waters v. Merritt, 277 Ala. 346, 170 So.2d 492, is an apt illustration of such a contingency. In that case, the building rented by the lessee was gutted by fire, and this court held that upon that happening the liability of the tenant for rent ceased. This contingency, i. e., the fire, destroyed any claim the lessor might have on the lessee for future rent. In the present case, under the above-quoted lease, a fire would not be a contingency. However, there could be other contingent factors which would destroy the claim of the lessor. The lessor could be deposed of title and the lessee ejected, or the lessor could create such a nuisance in another part of the building that the lessee would be constructally evicted. These and other probable contingencies bring this claim under the "contingent exception" rule to the statute of non-claim.

Although another point was involved in the disposition of the case of Chicago Title and Trust Co. v. Corporation of Fine Arts Building, 288 Ill. 142, 123 N.E. 300, the Illinois Supreme Court held that future rentals were a contingent claim. See, also, for further definitions of contingent claims the following: Cametal Corp. v. National Auto. & Cas. Ins. Co., 189 Cal.App.2d Supp. 831, 11 Cal.Rptr. 280, 283; Button v. Day, 205 Va. 629, 139 S.E.2d 91, 100; Bierman's Estate, Mo.App., 410 S.W.2d 342, 345.

We do not mean to hold that all leases or rental contracts are contingent, for some could be drafted to be absolute and non-contingent. We are clearly of the opinion, however, that the rental contract in the case before us can easily be distinguished from other claims, and is a "contingent claim." The demurrer to the answer of the defendant should have been sustained.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.